George **DUKES**

v.

Walter **WAITKEVITCH** and
**Frank A. Hall.**

Civ. A. No. 74–4376–T.

United States District Court,
D. of Massachusetts.

May 7, 1975.

Edward F. Haber, Boston, Mass., for petitioner.

Francis X. Bellotti, Atty. Gen., Barbara A. H. Smith, Asst. Atty. Gen., Boston, Mass., for respondents.

OPINION AND ORDER

TAURO, District Judge.

Petitioner has filed this Petition for a Writ of Habeas Corpus alleging that his conviction and imprisonment violated his Fourteenth Amendment rights of due process and equal protection. Specifically, he claims that as a black defendant, charged with a violent crime involving white victims, he was entitled to

have the trial judge question the prospective jurors on the subject of their possible racial prejudice. He claims that the failure of the trial judge to do so violated the constitutional requirements enunciated by the Supreme Court in Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973). The Commonwealth contends that *Ham* is not applicable to the facts of this case and that if it is applicable, the trial judge complied fully with its requirements.

Petitioner was one of two black defendants in the case of Commonwealth v. Cofield. He was tried in Suffolk Superior Court before a judge and jury on May 9, 1972 through May 17, 1972 on four counts each of assault with a dangerous weapon, armed robbery and kidnapping, as well as two counts of rape. The alleged victims were two white males and two white females. The petitioner was charged with being in a group of seven or eight knife-bearing black youths who accosted the two young white couples in the Fenway around midnight. The victims testified that they were robbed and both women testified they were raped at knifepoint by the petitioner. No arrests were made at the scene. Petitioner was identified a month later at an apparently chance sighting of him by the victims in the Municipal Court of Roxbury.

On May 9, 1972, prior to trial and prior to empaneling the jury, counsel for the petitioner submitted a timely motion to the trial judge to have various questions asked of the prospective jurors. Several of these questions were designed to elicit evidence of possible racial bias and prejudice.[1] The trial judge denied petitioner's request to have the questions regarding racial prejudice posed directly to the prospective jurors.

Before a jury panel was selected, the trial judge addressed the assembled veniremen who were seated in the rear of the courtroom. He informed them that the case dealt with rape, armed robbery, assault and kidnapping. He also informed them that the defendants were black and that the victims were white. He told them that they were not to decide the case on the basis of bias or prejudice and that they were not to consider the race of either the defendants or the victims in arriving at their verdict.[2]

Those jurors who were called to sit in the jury box were asked the "statutory" questions only.[3] Ultimately, 14 whites and 2 blacks were sworn as jurors.[4]

On May 17, 1972, petitioner was convicted on all charges. He was sentenced to the Massachusetts Correctional Institute at Walpole, where he is presently confined, for concurrent terms of 15–25

1. Counsel submitted 13 questions to be asked of the jurors. Among those questions were the following:
   "Would you be able to give a black man accused of rape with white women the same benefit of the doubt that you would give to a white defendant accused of rape with black women?
   "Do you live in an integrated neighborhood?
   "If Negroes moved into your neighborhood, would you be more afraid of crime than you are now?
   "Would you be able to give a black man accused of raping a white woman the same benefit of doubt that you would give to a defendant accused of raping a woman of his own race?"

2. During these preliminary instructions, the judge also informed the veniremen of the

presumption of innocence; of the necessity of deciding the case solely on the basis of the evidence presented; of the Commonwealth's obligation to prove the charges beyond a reasonable doubt; and of the juror's obligation to return a true and fair verdict.

3. Mass.Gen.Laws Ann. ch. 234, § 28:
   Upon motion of either party, the court shall, or the parties of their attorneys may under the direction of the court, examine on oath a person who is called as a juror therein, to learn whether he is related to either party or has any interest in the case, or has expressed or formed an opinion, or is sensible of any bias or prejudice, therein; . . . .

4. The record does not reflect the precise racial composition of the main jury and the alternate jurors.

years for rape; 15–25 years for assault and battery with intent to commit rape; 15–25 years for armed robbery; and 5–7 years for kidnapping.

The failure of the trial judge to question the jury on the subject of racial prejudice was raised on appeal. The Massachusetts Appeals Court affirmed the conviction and held that the mandate of *Ham* was met by the trial judge's general remarks to the assembled veniremen before the jury panel was selected. Commonwealth v. Cofield, 305 N.E.2d 858 (Mass.App.Ct.1974). An Application for Further Appellate Review was denied by the Supreme Judicial Court. Having exhausted his available state remedies, petitioner filed this application for a writ of habeas corpus.

## I

The first question to be decided is whether this is a proper case for the application of the rule announced in Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973). *Ham* did not precisely delineate which cases required interrogation of jurors on the question of racial prejudice. There, the black defendant was a civil rights worker charged with possession of marijuana. The Court, in a unanimous opinion, held "that the Fourteenth Amendment required the judge in this case to interrogate the jurors upon the subject of racial prejudice." 409 U.S. at 527, 93 S. Ct. at 850.

The Supreme Judicial Court has construed *Ham* to be applicable only where the defendant was "a special target of racial prejudice." Commonwealth v. Ross, [1973] Mass.Adv.Sh. 839, 296 N. E.2d 810. *Accord,* Commonwealth v. Lumley, Mass., 327 N.E.2d 683 (1975). The First Circuit disagreed. *Ross* dealt with a black defendant charged with a crime of violence involving a white security officer. The First Circuit held that those facts were sufficient to trigger application of *Ham.* Ross v. Ristaino, 508 F.2d 754 (1st Cir. 1974).

Without attempting to delineate the ultimate reach of *Ham,* it is clear that it is applicable to the facts of this case. Here, two blacks, alleged to have been members of a black gang, were charged with rape and robbery of four white victims. As in *Ross,* the operative circumstances involved interracial violence.

■ Petitioner would have this court adopt a per se rule that would require, when the defendant so requested, that jurors be questioned on the issue of racial prejudice whenever a black is charged with raping a white. In support of his position, petitioner has argued that, historically, racial prejudice is closely linked with charges of crimes of sexual violence. It is unnecessary to reach that issue as the additional factors present in this case—multiple defendants (all black), multiple victims (all white), and multiple crimes of violence, clearly bring this case within the mandate of *Ham,* as interpreted by *Ross.*

In *Ross,* the First Circuit held that *Ham* is to be applied retroactively. Ross v. Ristaino, 508 F.2d at 756. Thus, the only remaining question is whether the trial judge's preliminary instructions to the assembled veniremen constitute adequate compliance with the requirement in *Ham* that jurors be interrogated on the issue of racial bias in those cases where prejudice may be a factor in the trial.

Voir dire examination focused directly on the issue of racial bias is the ultimate means for jogging a venireman's conscience to the point that an acknowledgment of some latent bias might be revealed. It is not a perfect method for ferreting out prejudice, but it is the best we have. And so when a defendant in a case involving allegations of interracial violence requests voir dire interrogation, on the question of racial bias, his request should be granted. He is presumed to be innocent, and is entitled to the best protection the courts have available to ensure that bias and prejudice are not factors in his trial. Failure to comply with his request in such a situa-

tion violates the mandate of *Ham* and *Ross* and constitutes reversible error.

■ The trial judge's preliminary instructions to the veniremen were not an adequate substitute for the requested voir dire. Nor did his subsequent statutory questioning of the empaneled jurors save the day, since it was too remote from his preliminary instructions to ensure that the jurors' attention was specifically focused on the issue of racial bias.

Under all the circumstances, the petitioner was entitled to have the jurors questioned on the issue of racial prejudice. The failure of the trial judge to do so requires this court to enter the following order:

The writ of habeas corpus is granted and the writ shall issue in 120 days unless the Commonwealth shall have instituted proceedings to retry the petitioner in accordance with the principles stated above.