George DUKES, Petitioner-Appellee,

v.

Walter WAITKEVITCH et al.,
Respondents-Appellants.

No. 75–1179.

United States Court of Appeals,
First Circuit.

Argued April 6, 1976.

Decided June 10, 1976.

Barbara A. H. Smith, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and John J. Irwin, Jr., Asst. Atty. Gen., Chief, Crim. Bureau, Boston, Mass., were on brief for respondents-appellants.

Edward F. Haber, Boston, Mass., for petitioner-appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

PER CURIAM.

Petitioner, a black defendant charged with a violent crime involving white victims, sought a writ of habeas corpus on the ground that the failure of the state trial judge to question prospective jurors on the subject of racial prejudice violated his constitutional rights as enunciated in *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973). The district court held that the factual circumstances in petitioner's case came "within the mandate of *Ham*, as interpreted" by our opinion in *Ross v. Ristaino*, 508 F.2d 754 (1st Cir. 1974), and granted the writ. The government appeals.

The facts are clearly set forth in the opinion of the district court. *Dukes v. Waitkevitch*, 393 F.Supp. 253 (D.Mass.1975). Petitioner was tried in Suffolk Superior Court in May, 1972 on two counts of rape, three counts of kidnapping, and four counts each of assault with a dangerous weapon and armed robbery. Specifically, petitioner was charged with being in a group of seven or eight black youths who accosted two young white couples in the Fenway at night. The victims testified that they were robbed, and both women testified they were raped at knifepoint by the petitioner. Although no arrests were made at the scene, petitioner was identified a month later through an apparently chance sighting of him by the victims in Roxbury Municipal Court. *Id.* at 254.

Prior to trial the judge denied petitioner's request to have various questions regarding racial prejudice posed to the prospective jurors. The judge did, however, inform the veniremen of the type of crimes the case involved; he also told them that the defendants were black and the victims white; that they were not to consider the race of the defendants or victims in arriving at their verdict; and that bias and prejudice were not to influence their decision in the

case. The jury finally selected consisted of fourteen whites and two blacks. Each juror was asked the usual questions required by state law, including one asking whether the juror was "sensible of any bias or prejudice" in the case. *See id.* at 254 & n. 3. Petitioner was convicted on all charges. The issue of the trial judge's failure to question the prospective jurors specifically on the subject of racial prejudice was raised on appeal. The Massachusetts Appeals Court affirmed the conviction, holding that the requirement of *Ham v. South Carolina* was met by the trial judge's general remarks to the veniremen prior to the selection of the jury. *Commonwealth v. Cofield,* 305 N.E.2d 858, 861 (Mass.App.Ct.1974).* After the Supreme Judicial Court turned down petitioner's request for further appellate review, the district court entertained petitioner's application for a writ of habeas corpus. The government appealed the grant of the writ, and on September 10, 1975, we stayed the appeal pending disposition of our decision in *Ross v. Ristaino, supra,* then under review by the Supreme Court.

In *Ross* we held that a defendant's entitlement under *Ham* to have jurors interrogated during *voir dire* on the issue of racial bias was applicable to a case involving a crime of violence by a black defendant against a white security officer. 508 F.2d 754, 756–57. In the instant case the district court similarly held that *Ham* was applicable because "[a]s in *Ross,* the operative circumstances involved interracial violence." *Dukes v. Waitkevitch, supra,* at 255.

Subsequently, however, the Supreme Court reversed our decision in *Ross* on the ground that "the circumstances . . . did not suggest a significant likelihood that racial prejudice might infect Ross' trial." *Ristaino v. Ross,* 44 U.S.L.W. 4305, 4308, 424 U.S. 589, 598, 96 S.Ct. 1017, 1022, 47 L.Ed.2d 258 (1976). The Court emphasized that due to the specific factors present in *Ham* —viz. the defendant's "prominence in the community as a civil rights activist" and his defense "that he had been framed

[due to] his civil rights activities"—"racial issues . . . were inextricably bound up with the conduct of the trial" and "any prejudice that individual members of the jury might harbor" was therefore likely to be intensified. *Id.* The Court distinguished the situation in *Ross* from that in *Ham,* holding that "[t]he mere fact that the victim of the crimes alleged was a white man and the defendants were Negroes was less likely to distort the trial than were the special factors involved in *Ham.*" *Id.* While the Court indicated that under its supervisory power over federal trial courts it would require *voir dire* questions directed to racial prejudice if requested by a defendant, it held that the need to question veniremen specifically on this issue did not rise to constitutional dimensions in a state case such as *Ross. Id.* at 4308 & n. 9, 424 U.S. 589, 96 S.Ct. 1017.

Petitioner contends that, unlike *Ross,* his case presents "racial factors . . . of comparable significance," 44 U.S.L.W. at 4308, 424 U.S. 589, 96 S.Ct. 1017, to those in *Ham.* He claims that, in contrast to other violent crimes by blacks against whites, charges of interracial rape have historically exacerbated racial prejudices to an unusual degree. *See, e. g., Shepherd v. Florida,* 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740 (1951) (Jackson & Frankfurter, JJ., concurring). We do not read *Ross* to accord leeway for such distinctions. Cases suggested by the Court as similar to *Ham* are those in which the charges and defenses explicitly implicate racial issues, and not those which involve racial prejudice, by inference, through the identities of the parties. It was not, according to *Ross,* the confrontation between persons of different races which required *voir dire* questioning in *Ham,* see 44 U.S.L.W. at 4306, 424 U.S. 589, 96 S.Ct. 1017. Rather, it was the racial overtones of Ham's civil rights activism and his "frame-up" defense—discrete trial issues "[which] were likely to intensify any prejudice that individual members of the jury might harbor." 44 U.S.L.W. at 4308, 424 U.S. at 597, 96 S.Ct. at 1021.

---

* The decision of the Appeals Court was made prior to our opinion in *Ross v. Ristaino, supra.*

While interracial rape may be a classic catalyst of racial prejudice, the prejudice inheres in the identities of parties and victims and not in the specific issues. We hold therefore that *Ross* dictates that the order of the district court granting the writ of habeas corpus must be reversed.

*So ordered.*