Rockingham
No. 79-200

THE STATE OF NEW HAMPSHIRE

v.

RONALD H. GULLICK

February 14, 1980

*Thomas D. Rath,* attorney general (*Michael A. Pignatelli,* attorney, orally), for the State.

*Glenn G. Geiger, Jr.,* of Penacook, by brief and orally, for the defendant.

BOIS, J.   The defendant appeals his conviction by a jury·for the crimes of aggravated felonious sexual assault (RSA 632-A:2) and burglary (RSA 635:1). The Trial Court (*Mullavey,* J.) reserved and transferred exceptions presenting several issues for review. We overrule the exceptions and affirm his convictions.

The defendant first argues that the trial court erred in refusing to suppress an out-of-court identification because "the procedures used . . . were unnecessarily suggestive and conducive to irreparable misidentification." He claims that because the police believed the defendant to have been involved, they used methods which directed the witnesses' attention towards him.

The initial attack is directed toward the photographic identification which took place within a few hours of the commission of the crime. The defendant's picture was among seven photographs shown to the victims by the police. The defendant suggests that the procedure employed was improper because he did not fit the original general description of the assailant given by the witnesses. One of the victims picked out the picture of the defendant for "facial features" and one of another person for "skin tone." The defendant concludes therefrom that there was no positive identification and that "the procedures used . . . , coupled with the witnesses' physical and mental condition, irreparably tainted all future identifications used."

The second attack is directed at the in-person lineup which included the defendant but excluded the subject previously picked out of of the photographs for skin tone. The defendant alleges that the police unwittingly preconditioned the victims to believe that their assailant was among the persons to be viewed when they asked the victims to attend a lineup because "we think we got the one." He contends that he was picked out of the lineup by one of the victims only because the victim felt compelled to identify somebody and therefore subconsciously focused on the only face she had previously become familiar with, albeit in a photograph.

An attorney who then represented the defendant, although no charges were pending, not only was present at the lineup, but provided input as to the clothing worn and the placement of the seven persons viewed by the two victims. *See State v. Leclair*, 118 N.H. 214, 385 A.2d 831 (1978). He testified at both the suppression hearing and at the trial that the only woman able to identify the defendant subsequently said that she thought he was the one but that it was hard for her to tell or to be sure because the lighting was different. Counsel was satisfied, however, that the procedures employed by the police were fair and proper.

The court properly applied the "clear and convincing" burden of proof mandated by *State v. Leclair*, 118 N.H. 214, 385 A.2d 831 (1978), and found "on all the evidence that no suggestive procedures were used by the State prior to the photographic line-up or prior to the corporeal line-up which caused or contributed to the identification of the defendant by the witness . . . ." The court further found that no prejudicial statements were made by the police prior to either the photo identification or the lineup; that the witness picked out the defendant for "facial features" and another for "coloring" and identified the defendant in the lineup "without qualification or otherwise." Having found that the procedures used by the police were not suggestive, the court did not need to apply the totality of

circumstances test requiring the balancing of the prejudicial effect of a suggestive lineup against the five factors enumerated in *Neil v. Biggers,* 409 U.S. 188, 199–200 (1972), to determine the reliability of the identification. *State v. Leclair supra.* We hold that the court was correct in its ruling that "the identification is admissible . . . . The weight to be accorded that evidence is to be left to the determination of the jury."

■ The defendant next argues that due process required the court below to voir dire prospective jurors upon the subject of racial prejudice, and that the court erred both in refusing to permit counsel to personally examine the prospective jurors and in not asking the following suggested questions:

1. Have you ever gotten black people mixed up?

2. Do you think you would have an easier time differentiating from among white people than among black people?

3. Have you ever heard the phrase "all black people look alike"?

4. Are you willing to view with particular care, even with caution, eyewitness testimony when it stands alone; in other words there will be nothing else, no proceeds, no fingerprints, nothing else to tie the defendant down to the case except the word of some witnesses?

5. Are you open to the possibility that a person will say they're "positive that's the man" when in fact they are honestly mistaken?

We fail to see how the proposed inquiries clearly bear upon the issue of racial prejudice. Furthermore, we are not of the opinion that the statutory inquiry of the prospective jurors under RSA 500-A:22 (Supp. 1977) was superficial, lacking in probative value, or violative of the defendant's right to due process.

■ It is well settled that whether or not a prospective juror is free from prejudice is a finding to be made by the trial court on voir dire, and that this court reviews the record of the voir dire to determine the jury's impartiality; *State v. Laaman,* 114 N.H. 794, 331 A.2d 354 (1974), *cert. denied,* 423 U.S. 854 (1975); *State v. Dunbar,* 117 N.H. 904, 379 A.2d 831 (1977); *State v. Colby,* 116 N.H. 790, 368 A.2d 587 (1976); *State v. Conklin,* 115 N.H. 331, 341 A.2d 770 (1975). Our review on the question of impartiality in this case, however, is limited by the fact that the transcript does not recount the inquiry conducted by the court.

We also note that the defendant never objected to the court's refusal to allow his proposed questions at the time of the jury selection, that the defendant agreed that RSA 500-A:22 was complied with, and that he does not claim that a biased jury was in fact chosen. We address this question only because the reserved case indicates that two days before trial, the court noted an exception to its denial of a written motion for voir dire containing the specific questions.

The United States Supreme Court has recently addressed the question of voir dire and has concluded that it is to be conducted under the supervision of the trial court in the exercise of its broad and sound discretion. *Ristaino v. Ross*, 424 U.S. 589 (1976). It had previously held that under certain circumstances, the essential fairness mandated by due process required the court, when timely requested and in the exercise of its broad discretion, to interrogate or permit counsel to interrogate prospective jurors on the issue of racial bias. *Ham v. South Carolina*, 409 U.S. 524 (1973). *Ristaino* declared, however, that "[t]he Constitution does not always entitle a defendant to have questions posed . . . specifically directed to matters that conceivably might prejudice veniremen against him." 424 U.S. at 594. The United States Court of Appeals for the First Circuit has also recently observed that "[w]hile interracial rape may be a classic catalyst of racial prejudice, the prejudice inheres in the identities of parties and victims and not in the specific issues." *Dukes v. Waitkevitch*, 536 F.2d 469, 471 (1st Cir. 1976). Accordingly, we find that the inquiry conducted by the court of the prospective jurors satisfied due process.

Nothing in this opinion should be construed to limit the trial court, in the exercise of its sound discretion, from broadening the scope of its voir dire beyond the minimum suggested by the statute. RSA 500-A:22 (Supp. 1977). We suggest, however, that heed be given to the warning that if the judge "asks the question *sua sponte*, the appeal in all probability will be on the ground that he injected the racial issue into the case—hence reversible error." *Ross v. Ristaino*, 508 F.2d 754, 758 (1st Cir. 1974) (Moore, Circuit Judge dissenting), *reversed* in *Ristaino v. Ross*, 424 U.S. 589 (1976).

■ We collectively consider the next three issues.

1. The defendant objects to the denial of his motion for a directed verdict made at the close of the State's case. The record discloses no objection made to the court's order.

2. The defendant objects to the court's refusal to instruct the jury as requested concerning identification. The record reveals, however, that no objection was made to that refusal and that the following colloquy took place at the close of the court's charge:

Court: "Counsel care to approach the bench?"

Defense Counsel: "I have no reason to your honor."

3. Defendant argues that the State did not provide him with "potentially exculpatory evidence" regarding the testimony and reports of two doctors about sperm motility. He claims that the disclosure was required by the granting, in part, of a motion for discovery and inspection. When the testimony was offered, however, the defendant not only posed no objection but vigorously cross-examined both experts and moved for the introduction of one of the two reports as an exhibit.

We see no reason to waive our procedural requirement of contemporaneous objection and exception, and accordingly, reject the defendant's arguments. *State v. Josselin*, 119 N.H. 936, 409 A.2d 1336 (1979).

■ The next issue is whether the defendant was denied a fair trial because the State and some of its witnesses went to the scene of the crime on the third day of trial, without notice to, or the presence of, the defendant. The defendant now alleges that this action "violated granted discovery right [sic] and created such surprise at trial so as to prejudice the . . . case, denying him due process, a fair trial and effective assistance of counsel." He broadly argues that he possesses constitutional rights to notice and to participate in such experimentation with his own experts. He neither cites, nor do we find, authority in support of his arguments that he was deprived due process, a fair trial, and effective assistance of counsel under the fifth, sixth, seventh and fourteenth amendments of the United States Constitution. Accordingly, we dismiss the claim.

The defendant also accuses counsel for the State of "a deliberate act to reinforce their case perhaps prejudicially, and a knowing violation of the court's grant of . . . discovery . . . ." Relying on *State v. Arthur*, 118 N.H. 561, 391 A.2d 884 (1978), he declares that prosecutors must be held to a high standard of conduct and that the failure of the State to comply with the court order is inexcusable and prejudiced him in the preparation of his defense. We find the defendant's arguments to be without merit.

The defendant's accusations are not factually correct. He admits that the court denied his request for all reports of scientific examinations on September 13, 1978, because the State then had no such information. He attempts to justify his position, however, by arguing that the court's denial "should be read as saying that the court would have granted those requests had the State informed it of their existence or other intentions to conduct further experiments."

We are not moved by the defendant's wistful reasoning nor do we find the State's conduct improper. We require more than bare and

unsupported allegations in the record. *See e.g., State v. Arthur supra; State v. Breest,* 118 N.H. 416, 387 A.2d 643 (1978).

■ The next issue relates to pro se motions for discovery that the defendant had filed while awaiting trial, upon which no action was taken. Trial counsel subsequently filed a comprehensive motion for discovery. After a hearing, the court granted and denied certain of the requests. It acknowledged that the pro se motions had been brought to its attention and concluded that "the relief requested in those motions was stated by counsel to be the same or a duplication of the relief requested in the motion for discovery." The clerk of court noted an exception to the court's complete order.

There is no transcript of the discovery hearing, and the record is devoid of any further evidence on this point. The defendant now argues that the State's failure to answer the pleading within the ten-day time limitation provided in Superior Court Rule No. 58 or to provide the requested materials somehow violated his right to conduct his own defense under 28 U.S.C. § 1654 (1976), the fifth and sixth amendments of the United States Constitution, and part 1, article 15 of the New Hampshire Constitution.

We find no merit to the defendant's claims nor do we follow his reasoning. We fail to see how the defendant would stand to benefit at this time through a grant of his requested relief, namely that "this court . . . remand this case to the lower court and order the State to furnish him the material requested in his pro se motions."

■ Finally, the defendant argues that Massachusetts police illegally seized and possess certain articles of his clothing and personal effects. The trial court had ordered the items excluded from evidence and the State subsequently returned them to the Massachusetts authorities. The defendant excepts to the denial of his motion for the return of his personal effects alleging a violation of his rights and, more specifically, of RSA 595-A:6.

There is no transcript before us of any hearing on the defendant's motion to have his clothing returned. Without a record, and in view of the discretionary language of RSA 595-A:6, we cannot say that the court abused its discretion. *Cotter v. Cotter,* 119 N.H. 426, 402 A.2d 198 (1979); *Beaudoin v. Beaudoin,* 118 N.H. 325, 386 A.2d 1261 (1978). Furthermore, we do not see how the return of the defendant's clothing would bear upon the conviction appealed from in view of the fact that such items had been excluded from evidence on the defendant's own motion.

We recognize the duty of an attorney to represent a client zealously and competently but again remind counsel of the concurrent

obligation to maintain the integrity of the legal profession and improve upon the legal system. *Arouchon v. Whaland,* 119 N.H. 923, 409 A.2d 1331 (1979). The instant case is a classic example of counsel "comb[ing] the record on a 'treasure hunt' for issues never properly brought before the trial judge." *State v. Josselin,* 119 N.H. 936, 409 A.2d 1336 (1979). That some of the points briefed and argued are non-issues should be readily apparent to the trained mind. Such arguments add nothing to the persuasiveness of the case and do not serve the cause of preserving judicial resources.

*Exceptions overruled.*

All concurred.