COMMONWEALTH *vs.* JAMES H. SOWERS, JR.   March 10, 1982.   The defendant, a black man, appeals from a number of convictions on charges[1] stemming from his alleged unnatural rape of a white albino woman who is legally blind.   He claims (1) that the interrogation of some male jurors was insufficient to reveal racial bias and that such insufficiency was a violation of G. L. c. 234, § 28, as amended through St. 1975, c. 335, and a denial of his constitutional rights, and (2) that the victim's ophthalmologist was permitted to invade the province of the jury by giving his opinion as to the victim's ability to identify the defendant.   We affirm.

1. *Interrogation of the jury.*   After instructing the prospective jurors as a group as to the nature of the indictments and asking the general questions on bias required by G. L. c. 234, § 28, first par., the judge individually interrogated each juror.[2]   Two questions were asked of each juror in substantially the following form:

> a. "Now, as you perhaps know from my opening remarks to all of you down here yesterday afternoon, two of the charges that will be presented to the jury in this case involve claims that a white woman was raped by unnatural means by a black man.   Now, if [you feel that] hearing evidence on such matters . . . would be so distasteful to you or would make you so uncomfortable that you would want me . . . to relieve you from your obligation to sit as jurors in this case, I'd like you to tell me, but I know that you realize that both the Commonwealth and the defendant have a right to have this case heard by a jury of citizens of Suffolk County.   Do you want to ask me to not require you to sit on this case . . .?"
>
> b. "The second matter I'd want to bring to your attention is that I understand a majority of the witnesses that are going to be called by the Commonwealth will be white persons, and a majority of the witnesses that are going to be called by the defendant are going to be black persons.   Do you feel that even subconsciously you would have a tendency to accept the testimony of a white person over that of a black or the testimony of a black person over that of a white?"[3]

---

[1] The defendant was convicted on two indictments charging rape, and on indictments charging kidnapping, armed robbery, assault and battery with a dangerous weapon, and assault and battery.   The last two indictments were placed on file with the consent of the defendant.

[2] Although the transcript of the first day is missing, there is no factual dispute between the Commonwealth and the defendant as to what occurred.

[3] At the request of the Commonwealth and without objection by the defendant the first sentence of the second question was changed as to subsequent prospective jurors as follows: "The second matter I want to point out to you is that it's my understanding that some of the witnesses who are going to testify in this case are white persons; some of the witnesses who are going to testify in this case are black persons."   The second sentence of the question was unchanged.

At some point during the first day (although not noticed by the defendant until the second day of jury selection), the judge no longer posed the first question to male jurors, although he continued to ask it of all prospective female jurors. The defendant inquired as to the judge's intent in this regard, and the judge stated his belief that he was required by statute to give a prospective female juror the opportunity to withdraw, but was not required to do so with prospective male jurors, and that he had "intentionally" stopped asking the question of male jurors. The defendant objected on the ground that "perhaps the general question is not sufficient to elicit the response that we are seeking." Neither at trial nor on appeal does the defendant argue any impropriety based on sex discrimination, and the challenge to the different interrogation of male jurors is based solely on its potential failure to elicit racial bias.

The elimination of the question was not error.[4] Even if we were to accept the defendant's contention that this question was directed to eliciting racial bias, "interrogation of jurors as to racial prejudice is not constitutionally mandated" in cases of interracial rape. *Commonwealth* v. *Sanders*, 383 Mass. 637, 640 (1981). *Dukes* v. *Waitkevitch*, 536 F.2d 469, 470-471 (1st Cir.), cert. denied, 429 U.S. 932 (1976). See *Ristaino* v. *Ross*, 424 U.S. 589, 596 n.8 (1976); *Rosales-Lopez* v. *United States*, 451 U.S. 182, 190 (1981). Nor was the judge required to ask the same questions of all jurors. *Commonwealth* v. *Estremera*, 383 Mass. 382, 388-389 (1981). See *Commonwealth* v. *Sanders*, *supra* at 639.

The defendant's reliance on G. L. c. 234, § 28, second par., is also misplaced, as his trial occurred prior to *Commonwealth* v. *Sanders*, *supra*. In that case the convictions, including those on charges of interracial rape, were upheld without individual examination of all jurors. The Supreme Judicial Court directed, however, that in "similar trials *hereafter*" (emphasis supplied) jurors are to be individually interrogated "with respect to racial prejudice." *Id.* at 637-638. There is no question that the examination of jurors made by the judge in the defendant's trial met the pre-*Sanders* requirements. We need not decide whether the interrogation, particularly the second question which was directed at discovering racial bias, also met the post-*Sanders* standards.[5] In this connection see *Sanders*, at 641, where the court stated: "The judge has broad discretion as to the questions to be asked, and need not put the specific questions proposed by the defendant." See also *Ham* v. *South Carolina*, 409 U.S. 524, 527 (1973); *Rosales-Lopez* v. *United States*, 451 U.S. at 189.

---

[4] The judge's error as to the requirements of G. L. c. 234, § 1A, second par., is not significant. (Statute 1978, c. 41, § 1, made the provision gender-neutral.)

[5] The second question was substantially similar to the question proposed by the defendant in *Ristaino* v. *Ross*, 424 U.S. at 590 n.1, which the Supreme Court considered as one directed specifically to racial prejudice. See *id.* at 591-592.

2. *Testimony of the victim's ophthalmologist.* The victim's ophthalmologist, an expert in albinism, was permitted to testify that the victim, although legally blind, if she "were looking at a person from this distance, or from this distance" would be able "to identify that person," and that if she were looking at a book of photographs, would be able to pick out a photograph. We see no error in permitting the victim's physician to testify as to her visual capabilities and limitations occasioned by her albinism. The doctor's use of the word "identify" referred to the victim's physical ability to see, and his conclusion was not beyond the scope of his competence as an expert. See *Commonwealth* v. *Campbell,* 375 Mass. 308, 315 (1978).

*Judgments affirmed.*

*Patricia A. O'Neill* for the defendant.

*Philip A. Tracy, Jr.,* Assistant District Attorney (*David Mark,* Legal Assistant to the District Attorney, with him) for the Commonwealth.