Hillsborough
No. 79-438

## The State of New Hampshire

v.

## Joseph A. Lister

July 7, 1982

604

*Gregory H. Smith*, attorney general (*David L. Harrigan* and *Martha V. Gordon*, assistant attorneys general, on the brief, and *Mr. Harrigan* orally), for the State.

*James E. Duggan*, of Concord, appellate defender, by brief and orally, for the defendant.

BROCK, J. The defendant appeals his conviction for the crime of non-capital first-degree murder (RSA 630:1-a) after a trial bifurcated for separate determination of guilt and sanity. *Novosel v. Helgemoe*, 118 N.H. 115, 124–25, 384 A.2d 124, 130 (1978). The following issues are raised on appeal: (1) whether the trial court's voir dire of the jurors was adequate to select an impartial jury; (2) whether the search of the defendant's car and the seizure of his gun were lawful; (3) whether the defendant's objection to the court's reasonable doubt instruction was timely; (4) whether the trial court erred in failing to give an instruction concerning the defendant's failure to testify; (5) whether hypothetical questions based on facts not in evidence can be asked of an expert on cross-examination; and (6) whether the trial court's failure to instruct the jury in detail concerning the consequences of a verdict of insanity requires a new trial on that issue. Finding no merit to the defendant's arguments, we affirm.

In September 1975, the body of Kenneth Dunlap was discovered in his apartment in Manchester, New Hampshire. Shortly thereafter, a warrant was issued for the arrest of the defendant, Joseph Lister, on a charge of first-degree murder. The authorities were unable to locate the defendant until he was arrested in August 1978 in Massachusetts.

The defendant was returned to New Hampshire and his trial on the murder charge was set to begin on September 24, 1979. The first four days, September 24 to September 27, were devoted to various suppression motions, and the actual selection of jurors to sit on the case began on September 28. On that day, after five jurors had been selected, the defendant escaped from custody. The case was transferred to this court for a ruling on the question of whether the defendant could be tried *in absentia*, *State v. Lister*, 119 N.H. 713, 406 A.2d 967 (1979). We answered the question affirmatively and remanded in order that the trial could continue. *Id.* at 717, 406 A.2d at 969.

Upon remand, the Trial Court (*Contas*, J.) asked five jurors already selected and all the veniremen whether the fact that the defendant had escaped and would not be present at trial would prejudice or influence their consideration of the question of his guilt

or innocence. The five jurors, and all of those who were eventually selected as jurors, responded in the negative. The defendant argues that the trial court's voir dire of the jurors, concerning the effect that his escape might have on their ability to impartially judge the defendant's guilt or innocence, was insufficient to ensure their impartiality. *See* N.H. CONST. pt. I, arts. 17 and 35; U.S. CONST. amend. VI.

■ ■ It is well settled that whether or not a prospective juror is free from prejudice is a determination to be made in the first instance by the trial court on voir dire, *State v. Gullick*, 120 N.H. 99, 102, 411 A.2d 1113, 1116, *cert. denied*, 449 U.S. 879 (1980), and that this court on appeal "will evaluate the voir dire testimony of the empaneled jury to determine whether an impartial jury was selected." *State v. Laaman*, 114 N.H. 794, 800, 331 A.2d 354, 358 (1974), *cert. denied*, 423 U.S. 854 (1975). While the record indicates that many of the prospective jurors had some knowledge of the defendant's escape, each of the jurors selected stated under oath that he or she could render a verdict based only on the evidence presented at trial. In addition, the fact that several other veniremen stated in response to the trial court's question that they had formed an opinion about the case as a result of the defendant's escape, shows that the judge's questions were sufficient to uncover any bias or prejudice among the jurors. *See State v. Sullivan*, 121 N.H. 301, 303, 428 A.2d 1247, 1249 (1981). We therefore conclude that the trial court did not abuse its discretion in its voir dire examination of the prospective jurors, and that a fair and impartial jury was empaneled.

The defendant next contends that a gun which the police took from his car after his arrest in August 1978 should not have been admitted into evidence because it was obtained through an unlawful search of the car.

■ Testimony presented to the trial court indicates that at some point during the evening of his arrest, the defendant asked a custodial officer to bring his cat "Pepi" to him. He promised that in return for this favor, he would give the officer some important information. After the officer brought the cat to him and reminded the defendant of his promise, the defendant told the officer that there was a gun in a car that he had rented and abandoned in a nearby shopping mall. The police then went to the place indicated by the defendant, searched the car, and seized the gun. The defendant now contends that he never gave his consent to the search. We disagree. The defendant initiated the entire transaction with the police and volunteered the information about the car and

the gun. Under these circumstances, it would have been superfluous for the police to ask explicit permission to search the car. Because the defendant knowingly, freely and voluntarily consented to the search of the car and the seizure of his gun, the search and seizure were lawful and the gun was properly admitted into evidence. *See State v. Osborne*, 119 N.H. 427, 433, 402 A.2d 493, 497–98 (1979).

■ We next consider whether the defendant's objection to the trial court's instruction to the jury on reasonable doubt is properly before us. When the trial court instructed the jury at the close of the evidence, defense counsel did not object to the reasonable doubt instruction given by the court. After the jury had been deliberating for some time, at its request, the trial court repeated its reasonable doubt instruction in a form virtually identical to that which it had previously given the jury. At this point, the defendant objected for the first time to the court's reasonable doubt instruction on the ground that by failing to repeat the entire charge to the jury, the court had taken the reasonable doubt instruction out of context and had emphasized what reasonable doubt was *not*. At the time, no claim was made that the court's instruction impermissibly shifted the burden of proof to the defendant or in any way violated the requirements imposed by *State v. Wentworth*, 118 N.H. 832, 838–39, 395 A.2d 858, 862–63 (1978). Those arguments are made for the first time on appeal. Because the defendant failed to object and take an exception to the original reasonable doubt instruction given by the court and failed to state clearly his objection to the virtually identical reinstruction, he is precluded from claiming that the instruction was erroneous. RSA 491:17; *State v. O'Brien*, 114 N.H. 233, 236, 317 A.2d 783, 785 (1974); *see Roy v. Perrin*, 122 N.H. 88, 100, 441 A.2d 1151, 1159 (1982).

The defendant next argues that the trial court erred in failing to give an instruction concerning the defendant's failure to testify on his own behalf. He relies upon a decision of the United States Supreme Court, decided approximately one-and-one-half years after the trial in this case, which holds that a trial court must instruct the jury that no adverse inference may be drawn from the defendant's failure to testify when such an instruction is properly requested by the defendant. *Carter v. Kentucky*, 450 U.S. 288, 303 (1981).

■ ■ The defendant's reliance upon *Carter* is misplaced. In spite of the fact that the defendant had absented himself from the trial before its evidentiary phase began, a request for an instruction on his failure to testify was not made until after the trial court had charged the jury. In this State, a defendant waives his right to a specific jury instruction unless the request is timely made. *See*

Superior Court Rules 72 and 62H; *State v. O'Brien*, 114 N.H. at 236, 317 A.2d at 785. Second, the rationale underlying *Carter* is that a defendant present during trial who elects not to testify on his own behalf should not be prejudiced because of his decision to remain silent. The case before us, however, involves a defendant who elected not to be present at his trial, not a defendant who was present and chose not to testify.

After the guilt phase of the defendant's bifurcated trial resulted in a guilty verdict, the insanity phase of the proceedings commenced. During these proceedings, the State, on cross-examination, posed hypothetical questions to the defendant's psychiatric expert. Relying on *Connell v. Company*, 93 N.H. 244, 246, 40 A.2d 743, 744 (1944), the defendant contends that he should be given a new trial because certain questions asked of the expert were based on facts not in the evidence. *See id.*, 40 A.2d at 744. *See also State v. Arillo*, 122 N.H. 107, 108, 441 A.2d 1163, 1164 (1982).

■■ The present case is to be distinguished from *Connell*, however, since the questions here were asked on cross-examination of the expert, not on direct examination. *Cf. Connell v. Company*, 93 N.H. at 246, 40 A.2d at 744. On cross-examination, hypothetical questions can be asked for the purpose of testing the accuracy or credibility of an expert or determining the value of his opinion. 2 GARD, JONES ON EVIDENCE § 14:30, at 666 (6th ed. 1972); *see also* MCCORMICK ON EVIDENCE § 14, at 33 n.92 (2d ed. 1972); 2 WIGMORE ON EVIDENCE § 684, at 960 (Chadbourn rev. 1979). The State's purpose in posing hypothetical questions to the defendant's expert on cross-examination was to attempt to establish that the expert was unreliable. Because such questions are permitted for such purposes, the trial court properly allowed them.

At the close of the evidence in the insanity phase of the trial, the court instructed the jury that upon a finding of insanity the court would determine, "whether or not it [would be] dangerous for the defendant to go at large." The defendant complains that the court's instruction concerning the consequences of a finding of insanity violated the procedure outlined in *Novosel v. Helgemoe*, 118 N.H. 115, 125, 384 A.2d 124, 130 (1978). In *Novosel*, this court recommended that the trial court inform the jury briefly of the committal procedures available upon a finding of insanity. *Id.*, 384 A.2d at 130; *see* RSA 651:9, :11-a (Supp. 1981). The information given by the court to the jurors, although brief, satisfied the policy behind *Novosel* because its obvious implication was that the defendant would not go free if he were found to be dangerous.

■ Moreover, even if the instruction was deficient, the effect of

any error was minimized when the defendant's counsel repeatedly emphasized that a finding of insanity would not mean that the defendant would "simply walk away." *See Novosel v. Helgemoe,* 118 N.H. at 125, 384 A.2d at 130 (and cases cited therein).

*Affirmed.*

All concurred.