Merrimack
No. 83-439

### The State of New Hampshire

v.

### Frederick Wright

June 19, 1985

644

*Gregory H. Smith*, attorney general (*T. David Plourde*, assistant attorney general, on the brief), by brief for the State.

*Joanne S. Green*, assistant appellate defender, of Concord, by brief for the defendant.

SOUTER, J. A jury found the defendant guilty of the offense of assault committed by a prisoner. RSA 622:13 (Supp. 1983). On appeal he argues that the Superior Court (*Flynn*, J.) erred in failing to quash the indictment as duplicitous, in refusing to ask certain questions in voir dire of the prospective jurors, in failing to dismiss or direct a verdict of acquittal for insufficient proof of bodily injury, and in failing to give a requested instruction on proof of bodily injury. We affirm.

On April 4, 1983, the defendant was an inmate of the New Hampshire State Prison halfway house, Shea Farm. He worked in the community by day and returned to the supervised farm at night.

If such inmates are found to have consumed alcohol, they are returned to the prison. When the defendant returned to the farm on the night in question, the dormitory supervisor smelled alcohol on his breath. The supervisor administered a breath-alcohol test using an "alco-sensor" device, which gave a positive reading. The supervisor called in a counselor, John Boardman, who again administered an alco-sensor test with a positive result. Boardman took the defendant into an office where he administered two more tests with like results, whereupon he told the defendant that he would return him to the prison.

Boardman then handcuffed the defendant's hands in front. When the defendant tried to leave the office, Boardman grabbed him. The defendant responded by swinging his arms and striking Boardman's head. When Boardman tried to lead the defendant back to a chair, the defendant, wearing heavy boots, kicked him in the groin. Boardman bent forward, and the defendant hit his head again.

The indictment returned against the defendant charged that he "did, while under sentence . . . for not less than 3 1/2 years nor more than seven years . . . at the New Hampshire State Prison, purposely cause bodily injury to . . . Boardman: to wit: the [defendant] did strike . . . Boardman with his hands and feet causing soreness and bruises to Boardman's groin, knee and neck." Following this language in the indictment there was a citation to RSA 622:13 (Supp. 1983) (providing that "assault" by a prisoner is a felony), and a notation that the charge was a felony. The case was tried to a jury, which returned a verdict of guilty.

The defendant's first claim of error is that the trial court

should have quashed the indictment as duplicitous. An indictment is said to be duplicitous when it charges more than one offense in one count. R. McNamara, 1 New Hampshire Practice, Criminal Practice and Procedure § 315, at 199 (1980); *see State v. Hoyt*, 114 N.H. 256, 257, 319 A.2d 286, 287 (1974). The duplicitousness runs afoul of the requirement that an indictment inform a defendant of the charge he must meet, so that he can prepare for trial and plead any ensuing verdict as a protection against double jeopardy in any subsequent prosecution. *See State v. Shannon*, 125 N.H. 653, 663–64, 484 A.2d 1164, 1172–73 (1984).

In this case, the defendant argues that it was duplicitous to charge "assault" under RSA 622:13 (Supp. 1983) by using indictment language consistent with RSA 631:2-a, I(a) (Supp. 1983), the Criminal Code provision defining the misdemeanor of simple assault. The defendant points out that RSA 622:13 (Supp. 1983) does not define "assault," which must therefore be taken to mean assault as it existed at common law, since RSA 622:13 was in effect before the enactment of the present Criminal Code in 1973. In effect, he argues that common law assault and simple assault under the Code are differently defined, so that to charge both is to charge two different offenses.

The defendant is certainly correct that the indictment charges assault under RSA 622:13 (Supp. 1983) and also tracks the Code language of RSA 631:2-a, I(a) (Supp. 1983), which defines simple assault as purposely causing bodily injury. This does not, however, create any ambiguity or duplicitousness in identifying the elements of the offense. There would be duplicitousness only if purposely causing bodily injury had not constituted assault at common law. On the contrary, however, common law assault did include purposely causing bodily injury, *see State v. Cornwell*, 97 N.H. 446, 448, 91 A.2d 456, 458 (1952), just as it is defined under the Code. RSA 631:2-a, I(a) (Supp. 1983).

Since there is no basis to find duplicitousness from any definitional inconsistency as between the terms used, the only remaining question is whether the indictment could reasonably be read to charge offenses with two separate gradations of severity, the felony of RSA 622:13 (Supp. 1983) and the misdemeanor of RSA 631:2-a, I(a) (Supp. 1983). It is clear that the answer is no, and that the indictment charges only the felony of assault by a prisoner. The only possible reason for alleging that the defendant was under sentence to the prison was to satisfy that element of the felony offense; it would have been irrelevant in charging simple assault. Thus, the indictment can only be read as charging the felony. This conclusion

is supported by the citation to the felony statute in the indictment itself and by the very fact that the charge was stated in a grand jury indictment rather than a complaint or information. *See State v. Hoyt, supra* at 257–58, 319 A.2d at 287. Therefore, the motion to quash was rightly denied.

The defendant's next assignment of error is that the trial court abused its discretion by refusing to ask as broad a range of questions on jury voir dire as the defendant had requested. Originally the defendant had requested the court to ask the members of the venire panel whether any of them had been employed as correctional officers or had been victims of crime, about the relative weight they might give to testimony of a correctional officer and a prisoner, about the civil rights consequences of imprisonment and about views on drinking. The court did inquire about prior employment in corrections but refused the other requests. On appeal the defendant argues that the court erred in refusing to make specific inquiries about the panelists' possible experiences as victims of crime and about their views on drinking.

The threshold scope of juror voir dire is established by RSA 500-A:12. *See State v. Goding,* 124 N.H. 781, 783, 474 A.2d 580, 581 (1984). But we have recently required that the statutorily prescribed inquiries be supplemented with questions about the presumption of innocence and the burden of proof in criminal cases. *State v. Cere,* 125 N.H. 421, 424–25, 480 A.2d 195, 198 (1984). The purpose of all such questions is to elicit the "surface information necessary to furnish an intelligent basis for counsel's exercise of challenges." *State v. Goding, supra* at 783, 474 A.2d at 581.

As a general rule, decisions about the need to supplement the basic voir dire questions are left to the sound discretion of the trial court. *State v. Sullivan,* 121 N.H. 301, 303, 428 A.2d 1247, 1249 (1981); *State v. Dunbar,* 117 N.H. 904, 905, 379 A.2d 831, 832 (1977); *Ristaino v. Ross,* 424 U.S. 589, 594 (1976). *Cf. State v. Goding, supra* at 784, 474 A.2d at 581 (refusal to exercise any discretion is abuse of discretion). We will not revise the trial court's judgment "unless it is manifestly against the law and the evidence." *State v. Conklin,* 115 N.H. 331, 337, 341 A.2d 770, 775 (1975).

In applying these rules, however, certain more definite standards have emerged. We have held that "[t]he Constitution does not always entitle a defendant to have questions posed . . . specifically directed to matters that conceivably might prejudice veniremen against him." *State v. Gullick,* 120 N.H. 99, 103, 411 A.2d 1113, 1115–16 (quoting *Ristaino v. Ross, supra* at 594), *cert. denied,* 449 U.S.

879 (1980). We have, however, found an entitlement to supplemental questions when there is an articulable factual basis, specific to a venire panelist or to the circumstances of the case, for concluding that one or more members of the venire panel may be prejudiced or otherwise incompetent. We found such a basis, for example, when counsel gave the court reason to believe that one or more panel members had been disqualified for cause in a previous case. *State v. Cere supra.* And such a factual basis is encountered as a matter of course when widespread publicity precedes a criminal trial. *See State v. Laaman supra; Ham v. South Carolina,* 409 U.S. 524 (1973). *Cf. Ristaino v. Ross, supra* at 596 (supplemental voir dire required when circumstances "strongly suggested the need"), and *supra* at 598 (not required when there is no "significant likelihood" of prejudice).

 Applying our standards, it is clear that there was no abuse of discretion in the trial court's response to the defendant's requests. The court addressed the requests and granted one of them. The other requests that the court denied were not supported by any articulable factual basis for concluding that there were special problems involving one or more jurors that would warrant inquiry beyond customary voir dire. Rather, the requests were predicated on mere possibilities. The general possibility that a juror's views on drinking could influence his judgment does not require particular inquiry. *See State v. Dunbar supra.* And the general possibility that members of the panel might have been victims of crime and thereby prejudiced was reasonably dealt with by the general voir dire questions, asking whether the members of the panel had formed any opinion about the case or had any prejudice that might affect consideration of the case. *See* RSA 500-A:12, I(d) and (e).

While we find no abuse of discretion in refusing to extend the scope of voir dire in the present case, we do not wish to promote a grudging reception to requests for supplementary questions in future cases. Although the need for extra inquiry may not seem insistent, in a close case a few extra questions are better than the risks of appellate litigation. Suffice it to say that there is a happy middle ground between pointless inquiry and "specific questions [that] may activate latent . . . bias in certain prospective jurors or . . . insult others without uncovering evidence of bias in hard-core bigots who refuse to acknowledge their prejudice." *Commonwealth v. Lumley,* 367 Mass. 213, 217, 327 N.E.2d 683, 686 (1975) (footnote omitted); *see State v. Sullivan,* 121 N.H. at 303, 428 A.2d at 1249.

Each of the defendant's two remaining claims on appeal concerns the sufficiency of the evidence to prove the element of bodily injury.

The first of these claims was raised on the defendant's successive motions for dismissal and for directed verdict for failure to prove injury. The defendant argues that these motions were improperly denied because there was no evidence of some of the injuries specified in the indictments, and insufficient evidence of any injury at all. These points are not well taken.

■ Although the indictment alleged that bodily injury had consisted of "soreness and bruises to Boardman's groin, knee and neck," it was not necessary to prove every detail of these injuries as alleged. So long as there was some proof of bodily injury as alleged, cumulative or superfluous details were properly disregarded as surplusage. *State v. Greenwood*, 113 N.H. 625, 626, 312 A.2d 695, 697 (1973).

■ In this case there was ample evidence for some of the bodily injury alleged. As we have noted before, there was evidence that the defendant had struck Boardman twice about the head by swinging his shackled hands and had kicked him in the groin with a heavily booted foot. Boardman testified that after the defendant had kicked him, Boardman had reacted by bending forward and moving one hand to the groin. Considering this evidence "'in the light most favorable to the State with all reasonable inferences therefrom,'" *State v. Holt*, 124 N.H. 645, 647, 474 A.2d 1031, 1033 (1984) (quoting *State v. Canney*, 112 N.H. 301, 303, 294 A.2d 382, 383 (1972)), the jury could reasonably infer that the affected portions of the victim's body were sore and therefore injured as alleged. Thus the evidence was sufficient proof of bodily injury as alleged in the indictment.

The defendant's last claim of error simply raises the same issue in different guise. He requested a jury instruction that would have required the State to prove every specification of injury stated in the indictment. Since, as we have noted, the allegations of injury included surplusage, the court properly denied the request.

*Affirmed.*

All concurred.