Hillsborough
No. 87-426

### STATE OF NEW HAMPSHIRE
#### v.
### ARTHUR BONE

February 6, 1989

*Stephen E. Merrill*, attorney general (*Tina Schneider*, assistant attorney general, on the brief), by brief for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief for the defendant.

BATCHELDER, J.   The defendant appeals his conviction by a jury on two counts of aggravated felonious sexual assault. The defendant is a black man, and the victim is a white woman of French Canadian descent. The Court (*Groff*, J.) denied the defendant's pretrial requests for specific questions and for individual, sequestered *voir dire* of prospective jurors regarding racial prejudice. For the reasons that follow, we affirm the convictions.

Prior to trial, the defendant moved for individual, sequestered *voir dire* of potential jurors and submitted a list of proposed questions, which included the following race-related questions:

- a. "If you were unsure whether to believe the story of a white French Canadian or that of a black man, would you tend to give the benefit of the doubt to the white French Canadian?"
- b. "What do you think about the following statement: 'Blacks are less able to control their sexual instincts than whites'?"
- c. "Do you think that if a woman tells the police that she was raped that she probably was in fact raped?"
- d. "The defendant in this case is a 30 year old black man. The State alleges that he sexually assaulted a 46 year old white woman of French Canadian descent. How will Mr. Bone's race effect [sic] your decision in his case?"
- e. "What do you think of blacks who speak black English or speak with a 'black accent'? Would you disbelieve the word of such a person? Do you think that blacks who do not speak with a standard American accent are less honest or less intelligent than other blacks?"
- f. "Does the idea of a black male sleeping with a white female repulse you?"

The court denied the defendant's request for individual, sequestered jury *voir dire* and declined to pose the specific questions submitted by the defendant. Instead, the court asked the entire group of prospective jurors a series of questions designed to ensure that the jurors chosen would be free from any preconceptions, biases, or prejudices which might interfere with their ability to be

fair and impartial jurors. The following questions were included in the court's *voir dire*:

> "Are you aware of any prejudice against the Defendant, the victim, counsel or the parties or any prejudice whatsoever that you might have?"

> "Will the fact Mr. Bone is a black man have any effect on whether or not you will be able to come to an impartial verdict in this matter, or will this influence what your verdict might be in this case?"

> "Would the fact that the victim is of French Canadian descent have any effect on whether or not you will be able to come to a fair or impartial verdict in this matter, or will it have any influence on what your verdict might be in this case?"

After reading the entire list of *voir dire* questions to the prospective jurors, the court asked jurors to indicate whether they had any difficulties with the questions asked or if they would answer any of them affirmatively. The court held a discussion off the record at the bench with each juror who responded affirmatively, and proceeded to seat and excuse individual members of the jury panel.

██ The basic requirements for juror *voir dire* are the statutorily prescribed inquiries established by RSA 500-A:12, supplemented with questions about the presumption of innocence and the burden of proof in criminal cases. *State v. Wright*, 126 N.H. 643, 647, 496 A.2d 702, 704 (1985) (citing *State v. Cere*, 125 N.H. 421, 424–25, 480 A.2d 195, 198 (1984)). "As a general rule, decisions about the need to supplement the basic voir dire questions are left to the sound discretion of the trial court." *Wright*, 126 N.H. at 647, 496 A.2d at 704.

The defendant argues that the method of collective questioning employed and the general questions asked by the trial court were inadequate to expose potential racial bias in prospective jurors and that the court's action was, therefore, an abuse of its discretion. Although the defendant cites cases from other jurisdictions, there is adequate New Hampshire law on point, and we will confine our analysis to New Hampshire law.

█ The trial court has broad discretion to determine the extent, manner, and choice of questions used in juror *voir dire. See State v. Sullivan*, 121 N.H. 301, 303, 428 A.2d 1247–49 (1981); *State v. Weitzman*, 121 N.H. 83, 87, 427 A.2d 3, 5–6 (1981); *State v. Godin*,

124 N.H. 781, 783, 474 A.2d 580, 581 (1984). This court will not disturb the trial court's exercise of discretion unless it is "manifestly against the law and the evidence." *State v. Dunbar,* 117 N.H. 904, 905, 379 A.2d 831, 832 (1977) (quoting *State v. Conklin,* 115 N.H. 331, 337, 341 A.2d 770, 775 (1975)).

"While interracial rape may be a classic catalyst of racial prejudice, the prejudice inheres in the identities of the parties and victims and not in the specific issues." *Gullick,* 120 N.H. 99, 103, 411 A.2d 1113, 1115–16, *cert. denied,* 449 U.S. 879 (1980) (quoting *Dukes v. Waitkevitch,* 536 F.2d 469, 471 (1st Cir.), *cert. denied,* 429 U.S. 932 (1976)). There is no presumption of racial prejudice, and trial courts are not always required to give specific *voir dire* questions regarding possible racial prejudice. *See Gullick,* 120 N.H. at 102, 411 A.2d at 1116.

Our courts are encouraged to strive for that "happy middle ground between pointless inquiry and 'specific questions [that] may activate latent . . . bias in certain prospective jurors or . . . insult others without uncovering evidence of bias in hard-core bigots who refuse to acknowledge their prejudice.'" *State v. Wright,* 126 N.H. 643, 648, 496 A.2d 702, 705 (1985) (quoting *Commonwealth v. Lumley,* 367 Mass. 213, 217, 327 N.E.2d 683, 686 (1975)).

In this case, the court chose to supplement its basic *voir dire* questions with some additional questions specific to racial prejudice, but declined to use the specific questions posed by the defendant. We will not second-guess the court in its choice of specific questions in cases such as this, where a review of the questions posed shows a clear attempt by the court to achieve that "happy middle ground."

We do not find the method of questioning employed by the court to be an abuse of the court's discretion. The common New Hampshire practice of posing a series of questions to the panel, followed by individual discussions at the bench with any panelists who indicated that they have affirmative responses to any of the questions, has been thought to minimize awkwardness and promote candor from the panelists. *See State v. Bailey,* 127 N.H. 416, 421, 503 A.2d 762, 767 (1985). Concerns regarding the futility of *en banc* public questioning are minimized by these informal individualized judge-juror discussions.

We do not address issues regarding the failure of defense counsel to request, and the court to make, a record of those discussions, because those issues were not properly preserved for appeal or argued before us in this case. *See Bailey,* 127 N.H. at 421, 503 A.2d

at 767; *United States v. Pappas*, 639 F.2d 1, 3 (1st Cir. 1980), *cert. denied*, 451 U.S. 913 (1981).

The defendant's request for *voir dire* conducted by counsel was also properly denied. "In this State, the manner in which *voir dire* is conducted is wholly within the sound discretion of the trial judge." *Weitzman*, 121 N.H. at 87, 427 A.2d at 5–6. "Voir dire of a jury in this State, except in capital cases, has always been conducted by the trial court rather than counsel." R. McNamara, 1 New Hampshire Practice, Criminal Practice and Procedure § 754 (1980) (quoting *State v. Colby*, 116 N.H. 790, 793, 368 A.2d 587, 590 (1976)).

*Affirmed.*

All concurred.