## THE STATE *vs.* ELLIOT.

Windows placed in a dwelling-house are fixtures, and pass with the estate.

Where tenant at will procured windows for a dwelling-house, and permitted them to remain on his leaving the premises—*Held*, that he could not subsequently enter to remove them.

The State *v.* Elliot.

Where he entered for this purpose, and had obtained possession of the windows, and was leaving with them—*Held*, that the owner of the property, or his agent, might re-take the property, by seizing upon the windows, and forcing them from such person, using no more violence than was necessary for this purpose.

Where an individual was complained of for assault and battery, in re-taking property taken under such circumstances—*Held*, that the complaint could not be sustained.

COMPLAINT for an assault and battery, which was tried before a justice of the peace, and was brought to this court by appeal of the respondent.

On the trial it appeared that the complainant, one Mrs. Moore, had formerly lived, with the permission of the owner, in a small tenement some four or five years, paying no rent, and that there were no windows in it. Mrs. Moore testified that she was informed by the owner, that if she would procure windows for the house, she might remove them when she left. She procured the windows and had them fitted to their places in the house.

Before March, 1838, the owner died, and she, as directed by the agent of the administrator, left the premises in the spring of 1838, claiming the windows, the agent telling her, before she left, that if there was such an agreement in relation to them as she alleged, it would be abided by, but that he could give no authority to her at that time to take them. Soon after, she left, and when moving out notified Mrs. Elliot, who moved in, that she claimed the windows.

Mrs. Elliot did not belong to the respondent's family, nor did he then live in the house. Some time during the following winter, the farm and building was sold to a Mr. Jackman, without any reserve of the windows; and Elliot, the respondent, went into possession as tenant of Jackman, neither of them having any notice of the complainant's claim.

Some six months after the respondent had so held possession, Mrs. Moore came there when he was absent in the field, and took out the windows, no opposition being made or leave given her, and she left with them.

The State *v.* Elliot.

The respondent coming in and learning the facts, pursued her; and when she had proceeded about one hundred rods, overtook her, stopped her horse, and turned him partly round, seized the windows, claiming them as his; and after some struggle and violent language on his part, forced the windows from her, causing some injury to the complainant, but using no more violence than was necessary to regain possession of the windows. He then took the windows home and replaced them in the building.

The respondent's counsel contended that the windows were fixtures connected with the house, which Mrs. Moore had no right to remove, and that by the conveyance to Jackman without reserving them, they passed to him; and that the respondent, as his tenant of the building, had the right to retake them as he did—Mrs. Moore having removed them without any legal right to them—he using no more violence than was necessary for that purpose.

The court instructed the jury that the respondent could not legally retake the windows in the manner before stated, and that the acts testified to were sufficient to sustain the complaint for assault and battery. A verdict was thereupon taken, by consent, against the respondent, and motion was made to set the same aside for misdirection of the court.

*Goodall,* for the respondent. The complainant had no right to the windows. They were fixtures attached to the realty. 1 *Salk.* 363, *Poole's Case;* 3 *Atk.* 13, *Lawton* vs. *Lawton;* 2 *Brod. & Bing.* 254, *Buckland* vs. *Butterfield;* 6 *Bing.* 426, *Mansfield* vs. *Blackburn;* 2 *Kent's Com.* 279, 1*st Edition.*

Had the windows not been attached to the realty, the tenant could not have removed them after the lease had terminated, and she had left the premises. 2 *East* 88, *Penton* vs. *Robert;* 2 *Barn. & Cres.* 76, *Colegrave* vs. *Dios Santos.*

After the property was illegally taken from the possession of the respondent, he might lawfully re-take it, using no

more violence than was necessary for this purpose.  1 *Dane's Ab., ch. 2, art. 1 & 2, and authorities cited.*

*Blaisdell*, (Solicitor) for the state.  The complainant originally owned the windows.  The exception that she left them on removing from the premises, is obviated by the fact that she afterwards regained peaceable possession of them, having never given up her claim.  Under such circumstances the respondent had no right to re-take them by force, but was limited to his civil remedy.

UPHAM, J.  The defence in this case is a justification.  In a civil suit this could not be given in evidence, except specially pleaded ; but in a criminal prosecution such defence is admissible under the plea of not guilty.  2 *Pet. Ab.* 401 ; 6 *Mod.* 172 ; 12 *Salk.* 642 ; *Davis' Justice* 265.

The question arising is, whether the justification is made out.

The assault and battery originated in a controversy as to the ownership of certain windows.  These windows had been placed in a dwelling-house by the complainant while it was occupied by her, as a tenant at sufferance.  On removal of the tenant the windows were left in their proper places in the house, and the house was subsequently sold to the landlord of the respondent, with the windows attached.

The windows were unquestionably fixtures.  5 *Bac. Ab.* 466 ; 3 *East* 38, *Elwes* vs. *Mow ;* 2 *Strange* 1142, *Harvey* vs. *Harvey ; Toller's Ex.* 97 ; 3 *Dane's Ab., chap.* 76, *art.* 8 ; 2 *Greenl.* 173, *Smith* vs. *Goodwin ;* 6 *Greenl.* 154, *Farrar & a.* vs. *Stackpole ;* 6 *Ditto* 427, *Goddard* vs. *Bolster ;* 3 *N. H. Rep.* 503, *Kittredge* vs. *Woods ;* 20 *Wend.* 636, *Walker* vs. *Sherman ;* and the out-going tenant either could not remove them at all, or, if removable, they could only be taken at the time of leaving, and could not be reclaimed at any subsequent period.  2 *Kent's Com.* 346 ; 7 *Taunt.* 183, *Lee* vs. *Risdon ;* 1 *Barn. & Adol.* 394, *Lyde* vs. *Russell.*

The windows passed by deed, and the respondent was in actual possession of them as parcel of the premises conveyed, when they were dissevered from the house by the complainant without leave or authority from any one.

The complainant, after obtaining possession of the windows, left with them; and the respondent, on being informed of her acts, immediately followed to reclaim the property. She had proceeded about one hundred rods when the respondent overtook her, stopped her horse, turned him partly round, seized the windows, claiming them as his; and, after some struggle, and violent language on his part, forced the windows from her, causing some injury to the complainant, but using no more violence than was necessary to regain possession of the windows.

The case becomes, then, a question as to the extent of violence which may be exerted by the owner or his agent in reclaiming property taken from him by a wrong doer, under a mistaken claim of title, and where the re-taking attempted is immediately consequent on the taking.

It is a well settled principle of law that, in certain cases of necessity, a party injured is allowed to seek his own remedy; to retake his property; to repel force by force; to abate nuisances, &c.

The defence of one's self, husband, wife, child, parent, mother, or servant, is, under certain circumstances, a natural right; but one general principle holds in these cases, that the self-defence must be regulated by the nature, degree, and design of the attack, and the repelling force must go no farther than is necessary to prevent the mischief intended by the aggressor.

The same general rule applies to the wresting of property from another by force. In such case, the owner of the property has a right to defend it, but he can in no case go beyond what the urgency of the occasion requires. Where an intrusion upon property is made without force, it can only be repelled on notice to the intruder to leave, and gently

laying hands on him, to compel it. Where the entry is by actual force, force may be repelled by force, but too great care and caution cannot be used lest the individual should transcend the limited power necessarily placed in his hands for the protection of his rights.

A power of re-taking property, under certain circumstances, is necessarily incident to the protection of the above rights. But this right of recapture of property is far more limited, than its defence when in our actual possession. Where the property is immediately followed for recapture from the individual taking it, the same rule for the most part holds as in the defence of property in possession. The controversy is immediately consequent upon the act of taking, and the law arising upon it is the same.

Generally the only points to be determined in such case are, whether the pursuer has an undoubted right of property, and of immediate possession, and whether the individual removing it is a mere wrong doer. In such case a recapture of the property is permitted by the individual, when made only with the reasonable exercise of power which the occasion demands, and when limited and controlled by the urgency of the necessity compelling to this course.

Most cases of this kind arise where there is a felonious intent; and, when such is the cause of the taking, the urgency of a recapture is vastly greater than where the taking arises from a mere conflicting claim to title in the property.

In the former case a greater degree of force may with propriety be resorted to than in the latter. Indeed, a resort to any unusual degree of violence, where there is no felonious intent; or, where the violence is disproportioned to the value of the property; or, where there are other remedies equally effective for the individual, should hardly be encouraged, and will always admit of more or less doubt whether it can be sustained in law.

In the case before us, the true title to the property, as we hold, was in the individual under whom the respondent

claimed as tenant. At the same time, there is no doubt the complainant supposed the property belonged to her, and that she might lawfully remove it. The circumstances were such as would not call for or justify an aggravated case of violence, and fortunately none such occurred.

It does not appear that the respondent in any manner seized upon the person of the complainant, or that any injury occurred except what was merely incidental to the removal of the windows from her possession; and this was caused by the tenacity of the complainant in holding to the property. There was no immediate contact of the parties themselves, and nothing indicating a design of personal violence. There was some irritation of feeling manifested in language, but the sole force used was directly upon the property, until it was relinquished owing to the weaker hold of the complainant.

If there is any case where a recapture of property wrongfully taken, and which the party is at the same time moving, may be permitted, it would seem as though this might be one; and if force may be at all allowed, we could hardly expect a less degree of it than was here used.

We deem it our duty to be especially cautious in permitting an injured party to take his redress into his own hands. It is most usually a dangerous experiment for him and for the peace of community, so to do. Circumstances at times render this power necessary. In the present case the respondent went as far as was advisable, or perhaps justifiable to go; but as it does not appear that he transcended his rightful exercise of power, we regard his justification as sufficient, and that he cannot under such circumstances be held guilty of an assault and battery.

*Verdict set aside and nolle pros. entered.*