### STATE *v.* WOODWARD.

If complainant enter peaceably on the land of defendant, and is discovered there not committing any violence, a request to depart and a refusal to do so is necessary before the defendant can justify a resort to force to expel him.

APPEAL from the decision of a justice of the peace, on a complaint by John Flanders, the father, for assault and battery alleged to have been committed by the respondent, Alvin A. Woodward, on John W. Flanders, the son of complainant, at Hill, N. H., July 7, 1870.   Plea, not guilty.

It appeared that a difficulty arose between respondent and said John W. Flanders, in the fall or early winter of 1869, at which time hard words passed between them, and each claimed that the other was mainly in fault, and each claimed that the other laid up a grudge against him from that time, which led, in part at least, to the trouble on July 7, 1870.   The respondent had taken a place in Hill, of one Mrs. Adams, at the halves, for the year 1870, and was in the occupancy of the place, except the buildings and garden, for that purpose, and was (July 7) cutting the hay on said premises.   John Flanders had some sleds stored in a shed, and had a sleigh stored in the barn, upon this farm of Mrs. Adams.   There was a lane fenced out, leading from the main road to the buildings on said farm, some six or eight rods, which was an open way which had long been used in passing to and from these buildings; but how long did not appear, except a short part of it that ran to the barn, which had been open only some three years.   On the 7th of July, John W. Flanders, the son of John Flanders, nineteen years old, had been to a neighbor's on some errand, and, on returning, undertook to drive a neighbor's cow along towards her owner's home, which he found in the road; and in passing by this place of Mrs. Adams, this cow ran up this lane towards the buildings.   Young Flanders followed her into the lane, went by her, and so went to the barn on said farm to get a whip which he supposed to be in his father's sleigh in the barn; but not finding the whip there, he was returning down the lane to the main road, when he was accosted by the respondent, who was grinding his scythe in ·an open shed in which said sleds were stored.   Words passed between them;

---

and after young Flanders had got down into the old part of the lane, respondent came to where young Flanders was, and took him by the collar and pulled him towards the main road. Flanders testified that respondent choked him, knocked him down with his fist, and struck him on the top and back of his head twice as he was attempting to rise: while the respondent testified that he took said "Flanders by the collar with the left-hand and tried to lead him away; he fell down on his knees and braced back; I then cuffed his ears with the fingers of my right hand,"—and that this was all he did.

The court instructed the jury, that whether young Flanders was properly driving this cow home, and whether he had authority to do so or not, and whether the cow was rightfully in the highway or not, was immaterial in this case; that the lane being fenced out and thrown open, leading from the main road to the house and buildings, might ordinarily be considered as a license on the part of the owner for those who had occasion to go to her house or buildings for any proper purpose to pass and repass in said lane; but that, as the respondent was rightfully in possession of the premises, if they found said Flanders was there for any improper purpose, or if there for a proper purpose, yet he conducted himself in an improper manner, and was abusive or insulting to the respondent, the respondent might order him to leave the premises, and if he did not, he might forcibly remove him, using no more force than was necessary; but that if he struck said Flanders, or used force or violence when it was unnecessary to do so for the purpose of removing him from the premises, respondent would be guilty. Respondent testified that in the forenoon of the same day on which the alleged trespass was committed in the afternoon, he had hired of Mrs. Adams the use of the shed in which Flanders's sleds were stored, for the remainder of the season, and had got directions from her to have said sleds removed, and that the controversy in the afternoon arose concerning the removal of the sleds. The evidence also tended to show that respondent had made all the use of the shed he had any occasion or desire to do without such hiring of the shed, and it did not appear that respondent had or expected to have any use for said shed that he could not as well have had without any such contract.

The court instructed the jury, that if they believed there was any such hiring of the shed by the respondent as he stated, they might consider what motive he had in thus hiring it; and if the motive was to seek a quarrel with Flanders about the sleds, they might consider that as bearing upon the probabilities as to whether the respondent in this quarrel, which grew directly out of the question of the removal of the sleds from this shed, would be more or less likely to cuff young Flanders's ears very gently, or to strike him more after the manner described by Flanders.

To all which rulings and instructions the respondent excepted.

The jury returned a verdict of guilty, and judgment was rendered and sentence pronounced on said verdict; and respondent files this bill of exceptions, which is allowed by the court.

*Solicitor and Pike & Blodgett,* for the State.

*Shirley,* for the respondent.

BELLOWS, C. J.    Whether Flanders went to the barn for a proper purpose or not, and was or was not authorized so to do, it appears from the case that he was passing out of the lane peaceably, when Woodward seized him by the collar and pulled him towards the main road.

For this there is nothing in the case that furnishes any justification, whether he actually struck the complainant or not.

In any aspect of the case, the respondent would not be justified in using force to expel him until he had refused to depart on request. So far from that being the case, the complainant was then in the act of departing peaceably, and the violence used appears to have been wholly unnecessary and unjustifiable.

Under these circumstances the instructions were sufficiently favorable to the defendant, as it was immaterial whether the complainant's entry was unlawful or not.

The instructions that the jury might consider and weigh the respondent's motive in hiring this shed were correct.    It appeared to have been but a very short time before the affray, and it might justly afford an inference that the respondent had ill blood towards the complainant or his father.    At all events, it was proper that the evidence should be weighed by the jury on that point.

To the point that a request to depart was necessary before a resort to force, are *Green* v. *Goddard,* 2 Salk. 641 ; *Tullay* v. *Reed,* 1 C. and P. 6 ; *Scribner* v. *Beach,* 4 Denio 448 ; 1 Selw. N. P. 26 ; Ham. N. P. 143.    So it is considered in *State* v. *Elliot,* 11 N. H. 544.

*Exceptions overruled.*