Hillsborough
No. 81-195

THE STATE OF NEW HAMPSHIRE

v.

SHERMAN ARILLO

February 12, 1982

*Gregory H. Smith*, attorney general (*Michael A. Pignatelli*, assistant attorney general, on the brief), by brief for the State.

*James E. Duggan,* of Concord, appellate defender, by brief for the defendant.

PER CURIAM. The issues we decide in this second-degree assault case, RSA 631:2 (Supp. 1979), in which serious bodily injury is alleged, are whether the trial court erroneously allowed a doctor to testify on the seriousness of the injury, by using a hypothetical question containing a fact that the defendant asserts was not in evidence, and whether the evidence as a whole supported the conviction. We uphold the conviction.

On September 7, 1979, the defendant moved into an upstairs apartment in Nashua. At about 6 P.M., he began drinking rum and socializing with others, including people from the downstairs apartment. One Russell Riley, the victim, was among this group.

At about 9:30 P.M., Riley, the defendant, and two others went for a ride while continuing to drink rum. After they returned, Riley and the defendant got into an argument while still in the car when Riley spilled rum on the defendant. The defendant eventually left, but Riley ran after him, chasing him onto his porch. The defendant opened the door and ran upstairs to his apartment. Riley, who admitted he was drunk, stayed on the porch shouting obscenities and yelling for the defendant to come outside and "fight like a man." After a little while, the defendant came downstairs. He stated he came down and grabbed a stick because he heard a loud noise and thought Riley and others were coming up after him. He claims that when he opened the door, Riley punched him in the head. Two eyewitnesses who observed the event did not testify that they saw that blow. However, it is undisputed that the defendant struck Riley on the head with a stick, and there is also evidence of several such blows.

Riley was taken to a Nashua hospital and treated by Dr. Mason, who observed a head laceration over two inches long and a skull fracture of greater length. Being unable to tell whether a blood clot had formed between the skull and the brain, the doctor sent Riley to a Lowell, Massachusetts, hospital for a C.A.T. scan.

As a witness for the State, the doctor testified to the above facts concerning Riley's injuries and was then asked a hypothetical question in which he was asked to assume that Riley was "operated on by a neurosurgeon" and was then asked what conclusion he would draw, "knowing those facts about Mr. Riley's condition, as to whether or not there was an impairment severe to his health?"

The defendant objected on the ground that the question assumed a fact not in evidence—i.e., that Riley was "operated on"

in the Lowell hospital. The defendant argues that because the neurosurgeon who performed the alleged operation did not testify, the fact of the operation could be based on nothing but hearsay. We need not consider the issues raised regarding the use of hearsay evidence as a basis for a doctor's opinion because we are satisfied that there was evidence from which the jury could have found that the operation had been performed. Riley himself testified that he had been rushed to the Lowell hospital and that he "had an operation where they took a blood clot . . . ." On objection, the Trial Court (*Cann*, J.) instructed the jury to disregard the answer with reference to "what the operation did." The testimony that he underwent an operation, however, was allowed to stand and furnished a basis for the fact assumed in the hypothetical question. The answer to the question supported a finding that Riley suffered "serious bodily injury" (RSA 631:2 (Supp. 1979) and RSA 625:11 VI), even assuming that a doctor's opinion is necessary to prove this element, a point we need not discuss.

The defendant argues that the evidence was insufficient to support the conviction. He relies on RSA 627:7, which states that one "in possession . . . of premises . . . is justified in using non-deadly force upon another when and to the extent that he reasonably believes it necessary to prevent or terminate the commission of a criminal trespass . . . but he may use deadly force . . . only in defense of a person as prescribed in RSA 627:4 or when he reasonably believes it necessary to prevent an attempt by the trespasser to commit arson."

■■ Because the defendant raised this defense, the State was required to disprove it. RSA 626:7 I(a). Considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State, *State v. Martin*, 121 N.H. 1032, 1034, 437 A.2d 308, 309 (1981); *State v. Gilbert*, 121 N.H. 305, 313, 429 A.2d 323, 329 (1981), we are satisfied that a jury could find beyond a reasonable doubt that the defendant did not reasonably believe the force he used was "necessary to prevent . . . the commission of a criminal trespass. . . ." RSA 627:7.

■ One witness testified he saw the defendant walk down the stairs and hit Riley two or three times in the head with a stick. Another testified he saw the defendant hit Riley in the stomach, causing him to fall, and then strike him once or twice on the head with a stick. Neither witness testified that Riley struck out at the defendant. In our opinion, the evidence as a whole supported a

finding that the blows were not struck in self-defense. *See State v. Heger*, 117 N.H. 1021, 1021, 380 A.2d 1106, 1106 (1977).

*Affirmed.*