Strafford
No. 80-318

## THE STATE OF NEW HAMPSHIRE

v.

## WILFRED J. DUKETTE

April 7, 1982

*Gregory H. Smith,* attorney general (*Brian T. Tucker,* assistant attorney general, on the brief and *Martha Gordon,* assistant attorney general, orally), for the State.

*Fisher, Parsons & Moran,* of Dover (*Ronald B. Willoughby* on the brief and orally), for the defendant.

BROCK, J.   The defendant was convicted of aggravated felonious sexual assault, RSA 632-A:2 (Supp. 1981), after trial by jury in the Strafford County Superior Court (*Goode,* J.). On appeal to this court, he raises numerous issues, only a few of which we consider as having sufficient merit to warrant more than passing reference. For the reasons which follow, we affirm.

Briefly stated, the evidence produced at trial considered in the light most favorable to the State, *State v. Reardon,* 121 N.H. 604, 605, 431 A.2d 796, 797 (1981), proved the following. During the night of September 7, 1979, the prosecutrix was at a Dover nightspot with a number of acquaintances. Shortly before midnight, the defendant approached the prosecutrix and told her that a friend of hers who had left earlier suggested that he give her a ride home. She accepted the offer, and was given a ride home on the defendant's motorcycle. The defendant invited himself up to the prosecutrix's apartment, where he remained for only fifteen minutes because the prosecutrix and her roommate objected to his behavior and continued presence. As the defendant was leaving, the prosecutrix, concerned that he might pass out due to the alcohol he had been drinking and that he might remain inside the house, accompanied him down the stairs to the main door of the apartment house. After the prosecutrix stopped at the door, the defendant grabbed her around the throat, pushed her outside into a nearby field, and raped her. She ultimately escaped from the defendant and ran, partially unclad, to her apartment. She subsequently called the police from a neighbor's phone.

Even though the victim knew her assailant by name, the police conducted a photographic lineup on the morning of September 8, 1979. The prosecutrix unhesitatingly selected the defendant's photo from the array and identified him as her assailant.

The first issue raised by the defendant concerns the sufficiency of the indictment. He contends that because the indictment does not specifically allege that the victim did not consent to the act, it is fatally defective.

The indictment against the defendant states, in relevant part, that he "did knowingly engage in sexual penetration with another person, not his wife, by *overcoming* the victim through the

actual *application of physical force* in that the said Wilfred Dukette did grab [the prosecutrix] by the throat, *force her to the ground* and [raped her]." (Emphasis added.) This language closely parallels the language of RSA 632-A:2 I (Supp. 1981). "Generally, 'an indictment is sufficient if it uses the words of the proper section of the applicable statute.' " *State v. Taylor*, 121 N.H. 489, 495, 431 A.2d 775, 778 (1981) (citations omitted). In our view, the words in the emphasized portion of the indictment clearly informed the defendant that he was charged with committing the act without the victim's consent. We hold that the indictment was sufficient.

The defendant next argues that remarks made by the trial court during cross-examination of the victim were unfair and prejudicial to him. The record reveals that, after the victim testified that there had been no eyewitnesses to the assault and that the defendant had not attained sexual emission, the trial judge told the jury that the law did not require the State to present a witness corroborating the victim's testimony or to prove that emission took place, in order to obtain a conviction under RSA 632-A:2 (Supp. 1981).

■■ In effect, these remarks were instructions to the jury given during the course of the trial. Such instructions may be given by the trial court, if it determines, in the proper exercise of its discretion, they are required to clarify the issues and to assist the jury. *United States v. Pisciotta*, 469 F.2d 329, 333 (10th Cir. 1972); *Sagansky v. United States*, 358 F.2d 195, 201 (1st Cir.), *cert. denied*, 385 U.S. 816 (1966). It is possible that the number, timing and nature of instructions given during trial could disrupt a defendant's presentation of his case and thereby constitute an abuse of discretion. *See* ABA STANDARDS RELATING TO THE FUNCTION OF THE TRIAL JUDGE § 5.6(b) (Approved Draft 1972). While we do not encourage this practice, we find no abuse of discretion here.

■ The next issue raised by the defendant relates to the trial court's instruction on reasonable doubt. The defendant argues that because the trial court used the same reasonable doubt instruction that we held to be reversible error in *State v. Aubert*, 120 N.H. 634, 635–38, 421 A.2d 124, 126–27 (1980), its use in this case constituted reversible error. The trial in this case took place prior to the *Aubert* decision, and the defendant neither objected nor excepted to the trial court's definition of reasonable doubt. Accordingly, the defendant's objection to the instruction is deemed waived and is not properly before us on this appeal. *State v. Cass*, 121 N.H. 81, 82–83, 427 A.2d 1, 2–3 (1981); *see State v. Morehouse*, 120 N.H. 738, 745, 424 A.2d 798, 801 (1980) (opinion on rehearing).

We have considered the defendant's remaining arguments: that testimony concerning the victim's identification of him in a photographic array should have been excluded; that the trial court, pursuant to RSA 632-A:6 (Supp. 1981), improperly restricted his cross-examination of the victim; that the trial court should have granted him a new trial; and that the trial court improperly denied his request to instruct the jury on simple assault. We hold that these arguments have no merit and do not warrant further consideration.

*Affirmed.*

BATCHELDER, J., did not sit; the others concurred.