**Wilfred J. DUKETTE**

v.

**Everett I. PERRIN, Jr., Warden, New Hampshire State Prison; Gregory H. Smith, Attorney General, State of New Hampshire.**

**Civ. No. 83–116–D.**

United States District Court,
D. New Hampshire.

June 9, 1983.

Wilfred J. Dukette, pro se.

Brian T. Tucker, Asst. Atty. Gen., Concord, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

Petitioner Wilfred J. Dukette, appearing *pro se,* has filed an amended petition for writ of habeas corpus, 28 U.S.C. § 2254, claiming that his July 7, 1980, conviction for aggravated felonious sexual assault in the Strafford County (New Hampshire) Superior Court is constitutionally infirm. Petitioner is currently serving a four-to-eight-year term at the New Hampshire State Prison. He assigns the following grounds for relief:

1. The indictment for aggravated felonious sexual assault failed to state a triable offense.

2. The photographic identification procedures conducted prior to petitioner's arrest were impermissibly suggestive and violative of due process.

3. The petitioner was denied due process when the trial court refused to give a requested instruction on the lesser included offense of simple assault when the evidence warranted the giving of the instruction.

4. The trial court's reasonable doubt instruction reduced the prosecution's burden of proof and was constitutionally invalid.

5. Instructions given, *sua sponte,* by the trial court during petitioner's cross examination of the prosecutrix to the effect that neither corroboration nor proof of emission was required to sustain a conviction for rape denied petitioner the right to effective cross examination of witnesses.

6. The trial court's limitations on the cross examination of the prosecutrix resulted in a denial of the Sixth Amendment right to confront and cross examine witnesses.

7. Under the totality of the circumstances, petitioner was denied a fair trial.

*Exhaustion*

■ Petitioner timely appealed his conviction to the New Hampshire Supreme Court. In a written opinion, that Court rejected petitioner's claims concerning the sufficiency of the indictment, and ruled that the trial court did not abuse its discretion in instructing the jury, mid-trial, on New Hampshire law concerning corroboration and proof of emission. *State v. Dukette,* 122 N.H. 336, 444 A.2d 547 (1982). It further held that petitioner's failure to object or except to the reasonable doubt instruction given, an instruction which was later held to be reversible error in *State v. Aubert,* 120 N.H. 634, 635–38, 421 A.2d 124, 126–27 (1980) (decided September 17, 1980), constituted a waiver of that claim, and that the procedural default barred appellate review. As to petitioner's remaining claims, the Court held that these "arguments [had] no merit and [did] not warrant further consideration". *Id.* 122 N.H. at 339, 444 A.2d at 549.

Petitioner then filed a motion for rehearing or, in the alternative, a petition for writ of habeas corpus directed to the original jurisdiction of the New Hampshire Supreme Court. Petitioner specifically raised the argument, only latent in his original appeal, that the trial court's failure to give the requested instruction on the lesser included offense of simple assault constituted a violation of due process of law contrary to the Fourteenth Amendment of the United States Constitution, as interpreted by the United States Supreme Court in *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72

L.Ed.2d 367 (1982) (*"Hopper"*), and *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) (*"Beck"*). On February 9, 1983, the New Hampshire Supreme Court, treating the matter as a petition for writ of habeas corpus, denied the writ without opinion. Petitioner exhausted his state court remedies, having thus "'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim[s]". *Anderson v. Harless,* —— U.S. ——, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982), *quoting Picard v. Connor,* 404 U.S. 270, 275, 277–78, 92 S.Ct. 509, 512, 513, 30 L.Ed.2d 438 (1971); *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); 28 U.S.C. § 2254(b).[1] The amended petition is therefore properly before this Court for disposition on the merits.

*Sufficiency of the Indictment*

■ Petitioner maintains that the indictment for aggravated felonious sexual assault was constitutionally defective because it failed to allege lack of consent. Since the validity of the indictment presents a question going to the jurisdiction of the trial court, *see Knewel v. Egan,* 268 U.S. 442, 445–46, 45 S.Ct. 522, 524, 69 L.Ed. 1036 (1925); *In re Debs,* 158 U.S. 564, 600, 15 S.Ct. 900, 912, 39 L.Ed. 1092 (1895); *Ex Parte Yarbrough,* 110 U.S. 651, 654, 4 S.Ct. 152, 153, 28 L.Ed. 274 (1884); *Ex Parte Parks,* 93 U.S. 18, 22, 23 L.Ed. 787 (1876); *DeBenedictis v. Wainwright,* 674 F.2d 841, 842 (11th Cir.1982), the claim of insufficiency is addressed first.[2]

■ An indictment is constitutionally sufficient if it "set[s] forth the offense in the words of the statute itself as long as

---

1. Petitioner initially joined an unexhausted claim of suppression of exculpatory evidence and ineffective assistance of counsel in his writ. In accordance with *Rose v. Lundy, supra,* the Magistrate, by Order dated March 24, 1983, permitted petitioner to either amend his writ or seek dismissal without prejudice. Petitioner filed an amended petition on April 4, 1983.

2. Habeas corpus relief is available where the indictment is so defective as to deprive the trial court of jurisdiction. *See Lowery v. Estelle,* 696 F.2d 333 (5th Cir.1983); *Cramer v. Fahner,* 683 F.2d 1376, 1382 (7th Cir.) *cert. denied,* ——

U.S. ——, 103 S.Ct. 376, 74 L.Ed.2d 509 (1982); *DeBenedictis v. Wainwright, supra; Branch v. Estelle,* 631 F.2d 1229 (5th Cir.1980); *Burrows v. Engle,* 545 F.2d 552 (6th Cir.1976) (mere technical defects fail to state a claim for habeas corpus relief). *Compare Underwood v. Bomar,* 335 F.2d 783, 788 (6th Cir.1964), *citing Knewel v. Egan, supra,* for the proposition that habeas corpus relief is not available to redress the claimed insufficiency of a state court indictment. The "possibly grudging scope" of *Knewel* and like cases was disapproved in *Fay v. Noia,* 372 U.S. 391, 412–13, 83 S.Ct. 822, 834–35, 9 L.Ed.2d 837 (1962).

'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished'". *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974), *quoting United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135 (1882); *see State v. Taylor,* 121 N.H. 489, 495, 431 A.2d 775, 778 (1981). In pertinent part, New Hampshire law defines the crime of aggravated felonious sexual assault as follows:

*Aggravated Felonious Sexual Assault.* A person is guilty of a class A felony if he engages in sexual penetration with another person under any of the following circumstances:

I. When the actor overcomes the victim through the actual application of physical force, physical violence or superior physical strength.

N.H. RSA 632–A:2I (Supp.1981).

The instant indictment closely tracked the language of subsection I of the statute:

That the defendant, Wilfred J. Dukette, did knowingly engage in sexual penetration with another person, not his wife, by *overcoming* the victim through the actual *application of physical force* in that the said Wilfred Dukette did grab one [prosecutrix] by the throat, *force her to the ground* and did penetrate her vagina with his penis.

Tr. 356–57 (emphasis added).

▮ To be sure, if there is consent, there is no rape. *See State v. Boone,* 119 N.H. 594, 406 A.2d 113 (1979). By the same token, where there is force, there is no consent. The New Hampshire Supreme Court found that the emphasized portion of the indictment "clearly informed the defendant that he was charged with committing the act without the victim's consent", *State v. Dukette, supra,* 122 N.H. at 338, 444 A.2d at 549. There is no constitutional

error in that ruling. An indictment "'must be read to include facts which are necessarily implied by the specific allegations made'". *United States v. Cincotta,* 689 F.2d 238, 242 (1st Cir.), *cert. denied sub nom. Zero v. United States,* —— U.S. ——, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982) (citations omitted).

"It is a cardinal principle of our criminal law that an indictment is sufficient which apprises a defendant of the crime with which he is charged so as to enable him to prepare his defense and to plead judgment of acquittal or conviction as a plea to a subsequent prosecution for the same offense." *Portnoy v. United States,* 316 F.2d 486, 488 (1st Cir.), *cert. denied,* 375 U.S. 815, 84 S.Ct. 48, 11 L.Ed.2d 50 (1963).

*Id.*[3] Under the foregoing principles, the indictment was plainly sufficient.

*Suggestive Identification*

▮ Petitioner initially challenged the pre-indictment photo array at trial on the ground of the denial of right to counsel. Tr. 9. This claim is clearly without merit. *See United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973); *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Petitioner then moved to suppress the out-of-court identification on the ground of suggestiveness. The Court's review of the pertinent portions of the pretrial hearing, Tr. 15–33, discloses no evidence of suggestiveness. *See Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The trial judge viewed the twelve photographs used in the array and ruled that the display was not suggestive.[4] Tr. 16–17, 33–35. Were suggestiveness seriously at issue, there is little if any indication of lack of reliability. At trial, there was no dispute that the prosecutrix met the petitioner through a friend, that she had occasion to view him

---

**3.** These protections—fair notice and protection from repetitive prosecutions—flow primarily from the Sixth Amendment, which requires that a criminal defendant "be informed of the nature and cause of the accusation", *Russell v. United States,* 369 U.S. 749, 761–64, 82 S.Ct. 1038, 1045–47, 8 L.Ed.2d 240 (1962), and which applies to the states through the Fourteenth Amendment, *Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

**4.** The photographs are not part of the record before this Court because petitioner objected to their introduction at the pretrial hearing.

over a several-hour period before the alleged incident at a bar and in her own apartment, that she gave a description to the police, and that she picked him out of the photo array the next day without hesitation. Tr. 15, 21, 43, 62–85, 100–01, 224, 282–93. As the trial court ruled, the record simply fails to support a claim of a "substantial likelihood of irreparable misidentification". *See Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977), *quoting Simmons v. United States, supra,* 390 U.S. at 384, 88 S.Ct. at 971.

*Lesser Included Offense*

In *Beck v. Alabama, supra,* the Supreme Court held that a defendant in a capital case is entitled as a matter of due process to an instruction on a lesser included offense where the evidence in the case could reasonably support a finding of guilty on the lesser offense. *Hopper v. Evans, supra.* Relying on *Hopper* and *Beck,* petitioner urges the Court to reach the question left unanswered in *Beck,* namely whether the refusal to give a lesser included offense instruction where there is evidence in the record to warrant it constitutes a violation of due process in a noncapital case. *See id.* 447 U.S. at 638 & n. 14, 100 S.Ct. at 2390 & n. 14.

■ Respondent initially seeks dismissal of the claim on the ground that a state court's failure to instruct on a lesser included offense does not present a federal constitutional question cognizable in a federal habeas corpus proceeding. The cases cited by respondent, *Easter v. Estelle,* 609 F.2d 756, 758 (5th Cir.1980); *United States ex rel. Peery v. Sielaff,* 615 F.2d 402, 404 (7th Cir.1979) (per curiam) (*dicta*), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 749, *reh'g denied,* 448 U.S. 912, 101 S.Ct. 29, 65 L.Ed.2d 1174 (1980); *James v. Reese,* 546 F.2d 325, 327 (9th Cir.1976), were decided prior to *Beck.* In light of *Beck* and *Hopper* (*Hopper* itself was a habeas corpus case), it is now clear that this court has jurisdiction to hear on its merits petitioner's claim that

he was denied a federally protected *right to* due process. *See Davis v. Greer,* 675 F.2d 141, 143–44 (7th Cir.), *cert. denied,* 103 S.Ct. 310, 74 L.Ed.2d 289 (1982); *Simpson v. Garrison,* 551 F.Supp. 618, 620–21 (W.D.N.C. 1982), *aff'd* 705 F.2d 445 (4th Cir.1983). Accordingly, the questions before the Court are whether the crime of simple assault constituted a lesser included offense which was supported by evidence in the record, and if so, whether the failure to give the requested instruction constituted a denial of due process in this case.

Analysis of the merits of petitioner's claim requires a review of the evidence. The State's primary witness was the prosecutrix.[5] She testified that she first met Dukette in the early evening of September 7, 1979, when she bumped into her friend, Roberta Pawnell, Pawnell's boyfriend Bob Walker, and Dukette on a street corner near her apartment. Tr. 43–44. Pawnell asked her to join them at a local club featuring a country and western band, and she decided to go. *Id.*

The group sat at a double table. Tr. 48–49. At approximately 11:00 p.m. the prosecutrix walked up the hill to her apartment to ask her roommate if she could have her friends up to visit. Tr. 58, 123. She returned to the club by 11:30, but Pawnell and Walker had already left. Dukette told her that Pawnell had asked him to give her a ride home. Tr. 62. The prosecutrix accepted the ride, arriving home around midnight. Dukette invited himself upstairs. Tr. 63–64, 70–71. Dukette was intoxicated, and after ten or fifteen minutes the prosecutrix and her roommate decided to try to "get rid of him". Tr. 74–126. She walked downstairs with him to see that he got out safely. Tr. 74–75. At this point, Dukette grabbed her around the throat in a choke hold, led her into a field, and raped her. Tr. 76–84. He also slapped and bit her. Tr. 84. She broke free and ran back to her apartment wearing only her shirt. Tr. 87. Her roommate also testified to the fact that Dukette had been in their apartment, that

---

5. The New Hampshire Supreme Court referred to the complaining witness as the prosecutrix, a term this Court has adopted for purposes of this Order.

they had tried to get him to leave, and that when the prosecutrix returned to the apartment partially undressed, she stated that petitioner had raped her. Tr. 125–26, 131.

Petitioner took the witness stand in his own defense and gave a markedly different account of the events of that evening. His testimony was that he gave Pawnell a ride down to the club, where they met Walker. Tr. 279–80. At some point during the evening he met the prosecutrix when she approached the table at which he, Pawnell, and Walker were seated with some friends. She asked Pawnell to introduce her to Dukette, whom she referred to as a "hunk". Tr. 282. Roberta Pawnell, who appeared as a defense witness, also testified that when she and Dukette met Walker at the club the prosecutrix was already there with friends, Tr. 223–226, 231, 235–36, 240, and that she introduced "Duke" when the prosecutrix asked Pawnell who the "hunk" was with her. Tr. 224, 227, 240.

At around 11:00 Dukette went outside because someone told him his motorcycle had been tipped over. Tr. 287. There he met the prosecutrix, who told him that she had tipped the bike over. She asked him for a ride home, and he gave her one. Tr. 287–88. The petitioner then walked her to her door, at her request. Tr. 289. After a brief visit, he left the apartment at approximately 11:15 p.m. Tr. 291. He was followed by the prosecutrix, who grabbed his keys out of the ignition. According to Dukette, she then told him that she had walked to her apartment earlier to see if he could stay for the night and that he was going to stay. She put the keys in her pants and refused to return them. Dukette chased her around the side of the building, struck or pushed her against the building,[6] and grabbed her pants. Tr. 293–94. The keys fell to the ground. Tr. 292. Finding that the battery on his motorcycle had run down, petitioner walked to a nearby telephone and called his wife. She picked him up, and he returned later to retrieve the motorcycle. Tr. 292–93. Joyce Ann Dukette, petition-

er's wife, also appeared and testified that petitioner called her shortly before midnight to ask for a ride home. Tr. 259. Petitioner denied any act of rape. Tr. 294.

There was no physical evidence of rape. Laboratory tests of samples taken from the prosecutrix and her clothing showed no evidence of sperm or seminal fluid. Tr. 156, 214–17. All pubic hair samples were consistent with hair from the prosecutrix. The examining physician, Dr. William Cusack, found "no evidence of abrasion, tearing, or other damage to the vagina". Tr. 155. One small abrasion on the vulva was inconclusive on the issue of penetration. Tr. 159. Contrary to his initial expectations, Doctor Cusack found no evidence of trauma in any of the areas where the prosecutrix had reported to him that she had been bitten. Tr. 154–57.

The case went to the jury after argument by counsel focusing on the credibility of the respective witnesses. At the close of the argument, the trial court instructed the jury on the elements of aggravated felonious sexual assault. The petitioner requested the following instruction, which was refused. Tr. 365.

DEFENDANT DUKETTE'S REQUESTED INSTRUCTION NUMBERED 6

You are instructed that the Defendant Wilfred J. Dukette has presented [sic] to show that he did strike the complaining witness [prosecutrix]. If this evidence, considered with all evidence raises a reasonable doubt as to his guilt of the question of rape, then you must acquit the Defendant, Wilfred J. Dukette of rape and you may find him guilty of simple assault.

Certified Record of the Strafford County Superior Court.

"The federal rule is that a lesser included offense instruction should be given 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater.'"

---

**6.** The transcript indicates that petitioner demonstrated to the jury how he pushed her, but no description of that demonstration is provided. Tr. 295. In his habeas corpus briefs to this Court and the New Hampshire Supreme Court, petitioner states that he struck her in the face with a heel-of-the-palm karate thrust. Respondent does not dispute this representation.

*Hopper, supra* at 2053, *quoting Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973). The New Hampshire rule is the same. " 'To be entitled to the instruction . . . [1] the lesser offense must necessarily be included in the greater and [2] the evidence must justify a finding of guilt on the lesser offense.' " *State v. Boone, supra* 119 N.H. at 597, 406 A.2d at 114, *quoting State v. O'Brien,* 114 N.H. 233, 235–36, 317 A.2d 783, 784 (1974).

> In other words, the lesser offense must be included within but not, on the facts of the case, be completely encompassed by the greater. A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense.

*Sansone v. United States,* 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965) (citations omitted).

In *State v. Boone, supra,* the New Hampshire Supreme Court reserved the question whether simple assault is a lesser included offense of aggravated felonious sexual assault. The Court held that where the defendant admitted to penetration, the principal noncommon element between the crimes, his testimony eliminated any rational basis in the evidence for a finding of guilt on simple assault. Since the noncommon element was undisputed, no lesser included instruction was mandated.

The New Hampshire Supreme Court's reservation of the question is understandable. Aggravated felonious sexual assault is defined not only as sexual assault by means of force, *see* N.H. RSA 632–A:2 I (Supp. 1981), *supra,* but also encompasses situations where the alleged sexual contact has been accomplished by means of the helplessness, coercion, extortion, false imprisonment, intoxication, incapacitation, surprise, improper medical treatment, or the age or reduced mental capacities of the victim. N.H. RSA 632–A:2 II–XI (Supp.1981). Here, however, petitioner was charged with rape by means of the actual application of physical force under N.H. RSA 632–A:2 I (Supp.1981), and the statutory offense of simple assault[7] is therefore a necessarily included offense of the offense charged.

This case, then, is the mirror image of *State v. Boone.* Here the principal noncommon element, penetration, is hotly disputed. The prosecutrix states that petitioner viciously raped her. Petitioner claims that he hit or pushed her, but that he didn't rape her. The evidence was thus sufficient to permit a jury rationally to convict petitioner of the lesser offense of simple assault and acquit him of the greater offense of aggravated felonious sexual assault. *See Joe v. United States,* 510 F.2d 1038 (10th Cir.1974).

Respondent maintains, however, that the requested instruction was properly refused because petitioner's testimony was so wholly exculpatory that the evidence failed to furnish any rational basis for a conviction of simple assault. The State's argument is that petitioner's testimony would arguably support only a conviction on the basis of "unprivileged physical contact" pursuant to N.H. RSA 631:2–a I (Supp. 1981), and that because petitioner was trying to retrieve the keys to his motorcycle, his conduct was justified and therefore privileged.

■■■ The argument is without merit. To be sure, "due process requires that a lesser included offense instruction be given *only* where the evidence warrants such an instruction". *Hopper, supra* at 2053 (emphasis in original). This case is thus a far cry, however, from those where the evidence advanced by a criminal defendant is so totally exculpatory that a finding of guilt on a lesser included offense would be irrational. A criminal defendant who

---

**7.** New Hampshire defines simple assault in pertinent part as follows:

 I. A person is guilty of simple assault if he:

 (a) Purposely, or knowingly causes bodily injury or unprivileged physical contact to another; or

 (b) Recklessly causes bodily injury to another; or

 (c) Negligently causes bodily injury to another by means of a deadly weapon.

N.H. RSA 631:2–a (Supp.1981).

presents an alibi defense and who claims he was nowhere near the scene of the crime is not entitled to a lesser included offense instruction. *Murcer v. Jones,* 553 F.Supp. 841 (S.D.N.Y.1982); *United States ex rel. Brodie v. Hilton,* 496 F.Supp. 619 (D.N.J. 1980); *State v. McMillan,* 115 N.H. 268, 339 A.2d 21 (1975); *State v. O'Brien,* 114 N.H. 233, 317 A.2d 783 (1974). Conversely, a criminal defendant who admits in his own testimony that he is guilty of the greater offense is not entitled to a lesser included offense instruction. *Hopper, supra.* No criminal defendant has the constitutional right to insist on a lesser included offense instruction solely "to invoke the mercy-dispensing prerogative of the jury". *United States v. Sinclair,* 444 F.2d 888, 890 & n. 3 (D.C.Cir.1971).

■ Here, however, the evidence adduced at trial would have permitted a rational jury to convict petitioner of simple assault. Under New Hampshire law "[a] person is justified in using force *when and to the extent* that he *reasonably believes it to be necessary* to prevent what is or reasonably appears to be an unlawful taking of his property, ... or *to retake his property* immediately following its taking." N.H. RSA 627:8 (emphasis added). In this case, both the reasonableness of petitioner's belief and the reasonableness of the degree of force used present issues of fact and credibility for a jury. For example, it was for the jury to determine whether petitioner purportedly laid hands on the prosecutrix simply because he was angry rather than to secure the return of his property. *Cf. State v. Arillo,* 122 N.H. 107, 109, 441 A.2d 1163, 1164 (1982) (reasonableness of defendant's belief that the force he used was reasonably necessary to prevent a criminal trespass presented question for jury in prosecution for second degree assault). Alternatively, it was for a jury to determine whether petitioner's belief that actual force was necessary was a reasonable belief. *See State v. Gorham,* 120 N.H. 162, 163–64, 412 A.2d 1017, 1019 (1980) (unreasonable good faith belief not sufficient to establish defense of self defense). Furthermore, although there are no cases reported under the statute, the common law of New Hampshire is that a

request to return property (or to leave in case of trespass) is generally required prior to a resort to force. *State v. Woodward,* 50 N.H. 527 (1870); *State v. Elliot,* 11 N.H. 540 (1841); *see generally* Lafave & Scott, Handbook on Criminal Law 399–400 (1972). Finally, even where force is permissible, excessive force is not. The owner of property "can in no case go beyond what the urgency of the occasion requires", *State v. Elliot, supra* at 544, and petitioner's testimony presented a factual issue as to whether he used "more force than [was] necessary for that purpose". *Hopkins v. Dickson,* 59 N.H. 235, 236 (1879).

■ The evidence thus "furnish[ed] a rational basis for a finding of guilt on the lesser offense but not on the greater offense". *State v. Howland,* 119 N.H. 413, 417, 402 A.2d 188, 191 (1979), *citing Sansone v. United States, supra* 380 U.S. at 350, 85 S.Ct. at 1009. The fact that a jury *could* have acquitted the petitioner of both simple assault and aggravated felonious sexual assault upon the basis of his testimony is no reason, in our constitutional system, to refuse the instruction on the lesser included offense.

> The fact that the evidence might raise an issue as to whether any crime at all was committed is not in the least inconsistent with a claim that it also raised an issue as to whether or not the plaintiff in error was guilty of [the lesser offense] instead of [the greater].

*Stevenson v. United States,* 162 U.S. 313, 322, 16 S.Ct. 839, 842, 40 L.Ed. 980 (1896) (defendant in murder trial entitled to have his case presented to jury on theories of self defense and the lesser included offense of manslaughter). Moreover, petitioner did not request an instruction on justification at trial. The irony of considering the issue in hindsight is manifest. In sum, while it is proper to deny a lesser included offense instruction where a defendant's own evidence negates the possibility that a rational jury could acquit him of the greater offense and convict him on the lesser, such is not the case here. Petitioner testified to what a jury could find to be a simple assault.

The remaining question is whether the refusal to give the instruction was an error of constitutional magnitude warranting habeas corpus relief. In considering this issue, the Court is mindful of the fact that a claimed error in jury instructions is a ground for federal habeas corpus relief only where the "flawed portions of the charge" have a " 'sufficiently devastating impact' ... on the trial to deny petitioner his due process rights". *Niziolek v. Ashe,* 694 F.2d 282 (1st Cir.1982), *quoting Grace v. Butterworth,* 635 F.2d 1, 6 (1st Cir.1980), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3053, 69 L.Ed.2d 421 (1981). As the Supreme Court has stated:

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgments is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' *Cupp v. Naughten,* 414 U.S. [141], at 147 [94 S.Ct. 396 at 400, 38 L.Ed.2d 368] [1973], not merely whether 'the instruction is undesirable, erroneous, or even "universally condemned," ' *id.,* at 146, 94 S.Ct. at 400.

*Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) (footnote omitted).

In *Beck,* the Supreme Court considered the constitutional ramifications of the unwarranted denial of a lesser included offense instruction,[8] and concluded that the failure to give the instruction so undermined the reliability of the fact finding process as to constitute a denial of due process. The Court explained that "providing the jury with the 'third option' of conviction on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard". *Beck* 447 U.S. at 634, 100 S.Ct. at 2388. In so holding, the Court adopted the rationale of its earlier decision in *Keeble v.*

*United States,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973) ("*Keeble*"), which had mandated the giving of the lesser included offense instruction in all federal trials.

> [I]t is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. *But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory.*

*Beck, supra, quoting Keeble, supra* at 212, 93 S.Ct. at 1997 (emphasis added). In *Beck,* the Court extended *Keeble* to nonfederal capital cases, holding that the failure to give a jury the option of convicting on a lesser included offense "would seem inevitably to enhance the risk of an unwarranted conviction". *Beck* 447 U.S. at 637, 100 S.Ct. at 2389. The Court found the risk to be intolerable in a case where the defendant's life was at stake.

The risk is equally intolerable in this case. Jury instructions which inevitably enhance the risk of unwarranted conviction have never been tolerated in our system of jurisprudence. It is fundamental, for example, that a criminal defendant is entitled to an instruction on the presumption of innocence, *Taylor v. Kentucky,* 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), and may not be convicted of a crime except by proof beyond a reasonable doubt, *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1969). Similarly, a court's instructions may not dilute the government's burden by shifting the burden of proof to the defendant, *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), or by requiring a defendant to

---

**8.** Under the Alabama death penalty statute at issue in both *Hopper* and *Beck,* the trial judge was prohibited from giving the jury the option of convicting a defendant of a lesser included offense.

prove the credibility of his witnesses, *Cool v. United States,* 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972). This is so because the reasonable doubt standard

> is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' *Coffin v. United States, supra* [156 U.S. 432], at 453 [15 S.Ct. 394 at 402, 39 L.Ed. 481] [1895].

*In re Winship, supra* 397 U.S. at 363, 90 S.Ct. at 1072. The fact that defendants in capital cases are afforded additional constitutional protections in no way diminishes the importance of the fundamental constitutional rights accorded all defendants in criminal cases.

In *Beck* and *Keeble,* the Supreme Court's concern over unwarranted convictions stemmed in part from the perception that a jury, faced with a defendant plainly guilty of a serious offense, would be likely to resolve its doubts in favor of conviction. Here the jury was confronted with a defendant who, by his own admission, was arguably guilty of assault. Furthermore, and perhaps more important, is the fact that the determination of guilt or innocence on the charge of rape in this case turned solely on the credibility of the witnesses. If the jury believed Dukette, "it should have acquitted him of rape and could have convicted him of [the] lesser included offense". *Joe v. United States, supra* at 1040. The jury, however, was presented with only two options. It could convict him of aggravated felonious sexual assault or it could acquit. "We cannot say that the availability of a third option—convicting the defendant of simple assault—could not have resulted in a different verdict". *Keeble, supra* 412 U.S. at 213, 93 S.Ct. at 1998.

 The prejudice involved is of the most fundamental sort. "[Q]uestions of credibility, whether of a witness or a con-

fession, are for the jury. This is so because trial courts do not direct a verdict against the defendant on issues of credibility." *Jackson v. Denno,* 378 U.S. 368, 386 n. 13, 84 S.Ct. 1774, 1786 n. 13, 12 L.Ed.2d 908 (1964); *see generally Connecticut v. Johnson,* —— U.S. ——, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983) (plurality opinion of Brennan, J.) (and cases therein cited). It is not for a court to pass upon "the strength, credibility, and tendency of the evidence" by withdrawing from the jury the option of the lesser included offense. *Stevenson v. United States, supra* 162 U.S. at 315, 16 S.Ct. at 840. The danger is all the more apparent where, as here, the criminal defendant's request for a lesser included offense instruction goes to the heart of his theory of the defense.

> The jury is the fact-finder. If the trial judge evaluates or screens the evidence supporting a proposed defense, and upon such evaluation declines to charge on that defense, he dilutes the defendant's jury trial by removing the issue from the jury's consideration. In effect, the trial judge directs a verdict on that issue against the defendant.

*Strauss v. United States,* 376 F.2d 416 (5th Cir.1967). *See generally Bird v. United States,* 180 U.S. 356, 21 S.Ct. 403, 45 L.Ed. 570 (1901).[9] It may be that a jury would find petitioner's story incredible, but like any criminal defendant he had a right to have his testimony submitted, with proper instruction, for the jury's consideration. "[A]rguments by counsel cannot substitute for instructions by the court." *Taylor v. Kentucky, supra* 436 U.S. at 488–89, 98 S.Ct. at 1936.

 Under the circumstances, the failure to give the requested instruction seriously undermined the integrity of the fact finding process and denied petitioner due process of law. The error was not harmless beyond a reasonable doubt. *See Hopper, supra* at 2054. The prosecutrix testified to rape; the petitioner denied it. Both stories

---

**9.** In New Hampshire a "requested charge on a party's theory of the defense must be given if such theory is supported by some evidence".

*State v. Aubert, supra,* 120 N.H. at 635, 421 A.2d at 126.

were corroborated in certain key respects by other witnesses. The physical evidence of rape was inconclusive. Furthermore, this is not a case of "technical error appearing in 'artificial isolation', ... or one that was cured by an otherwise proper charge". *Dunn v. Perrin,* 570 F.2d 21, 25 (1st Cir.), *cert. denied,* 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978), *quoting Cupp v. Naughten, supra* 414 U.S. at 147, 94 S.Ct. at 400. The trial court's final charge focused exclusively on the charge of aggravated felonious sexual assault. During the course of trial, the trial judge stopped defense counsel's cross examination of the prosecutrix to instruct the jury, *sua sponte,* that neither emission or corroboration was required to sustain a rape conviction. While the instructions are plainly correct as a matter of New Hampshire law, they did have the inevitable effect of refocusing the jury's attention on the greater offense at the very time defense counsel was trying to lay the foundation for his theory of the case. Indeed, the trial court's final words to the jury were an admonition that lack of proof of emission was "not fatal to the State's case". Finally, the court's reasonable doubt instruction, which repeatedly emphasized that the State did not need to establish guilt by a mathematical or scientific certainty or beyond all doubt, was held to be reversible error in *State v. Aubert, supra.* Although we need not—and do not—reach the question whether this instruction was error which would form an independent basis of habeas corpus relief,[10]

it is evident that the error here, namely the failure to give the lesser included offense instruction, was not affirmatively cured by the remaining portions of the charge as a whole. *Compare Cupp v. Naughten, supra.*

Accordingly, the petition for writ of habeas corpus must be and herewith is granted. Disposition of the writ on this ground renders it unnecessary to consider petitioner's remaining challenges to the jury instructions and evidentiary rulings.[11] The writ shall issue unless, within thirty days from the date of this Order, the State has either reinstated proceedings against the petitioner or has appealed the case to the First Circuit Court of Appeals. The State shall within five days of the date of this Order inform the Clerk of this Court of petitioner's prior bail status and shall inform the Court whether the State has any objection to petitioner's release on bail pending the disposition of these proceedings.

SO ORDERED.

10. Respondent argues that petitioner's failure to object to the reasonable doubt charge constituted a procedural default barring habeas corpus relief under the "cause and prejudice" standard of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Breest v. Perrin,* 655 F.2d 1 (1st Cir.), *cert. denied,* 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 597 (1981). Given the disposition of the writ on other grounds, it is not necessary to address this issue. The Court reviews the charge as a whole solely to determine whether a separate and distinct error of constitutional magnitude may be held harmless. In any event, it is clear to this Court, and I so find and rule, that the error in this case would not be harmless even in the absence of

the allegedly ailing reasonable doubt instruction.

11. Since his trial the New Hampshire Supreme Court has issued two opinions interpreting with the New Hampshire "Rape Shield" law. *See State v. LaClair,* 121 N.H. 743, 433 A.2d 1326 (1981); *State v. Howard,* 121 N.H. 53, 426 A.2d 457 (1981). In view of these developments in state law, consideration of petitioner's challenged evidentiary rulings is not warranted at this time. "The writ of habeas corpus ordinarily will not lie solely to correct alleged errors in evidentiary rulings." *Allen v. Snow,* 635 F.2d 12, 15 (1st Cir.1980), *cert. denied,* 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981), *quoted in Subilosky v. Callahan,* 689 F.2d 7, 10 (1st Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1788, 76 L.Ed.2d 356 (1983).